**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| GENE H. ZAID, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) Case No. 6:22-cv-01089 |
| | ) *Reno County Case No. 2022-CV-000058* |
| JASON R. BOYD, | ) |
| | ) |
| *Defendant.* | ) |
| | ) |

**DEFENDANT'S ANTI-SLAPP MOTION TO STRIKE AND/OR**
**MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)**

This lawsuit is an attempt to harass Defendant Jason Boyd and chill protected speech on matters of public concern. Pursuant to the Kansas Public Speech Protection Act, Boyd moves to strike Plaintiff Gene Zaid's sole claim—defamation. Because (1) Zaid's claim is "based on, relates to or is in response to [Defendant's] exercise of the right of free speech, the right to petition, or the right of association," (KSA §60-5320(d)), and (2) Zaid cannot "establish a likelihood of prevailing on the claim by presenting substantial competent evidence to support a prima facie case" of his claim, the Court must grant this motion and strike the claim. Alternatively, Boyd moves to dismiss Zaid's claim for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.      BACKGROUND

Zaid is the founder and Chief Executive Officer of GeoChemicals, LLC ("GeoChemicals"). *See Our Team*, GeoChemicals, https://www.geo-chemicals.com/team. He is a defendant in lawsuits filed by Jacam Chemical Company 2013, LLC ("Jacam 2013") in Kansas state court (*Jacam 2013 v. William Kainz, GeoChemicals, LLC, and Gene Zaid,* Case. No. 2019-CV-000021) and Delaware Chancery Court (*Jacam 2013 and CES Energy Solutions Corp. v. Jacam Chemical*

*Co. Inc., Jacam Chemical Company, LLC, Gene Zaid, and Jason West*, C.A. No. 2021-0659-SG).

Jacam 2013 is a competitor of GeoChemicals and has alleged, among other claims, trade secret

misappropriation, conspiracy, and breach of fiduciary duty against Zaid in these lawsuits.

Until November 4, 2021, Boyd worked for Oilfield Labs of America, LLC ("OLA") in

various roles, most recently as Chief Technical Officer. *See* Affidavit of Jason Boyd, <u>Exhibit A</u>, ¶

2. OLA is a third-party consultant for oil and gas producers and provides independent data analysis

and lab services for chemical, water and energy businesses.  *Id.* at ¶ 3; *see also Services*, OLA,

https://ola-us.com/services/. While employed by OLA, Boyd analyzed oil and gas chemicals for

various OLA customers and provided his opinions regarding those chemicals, including as to

efficacy, to the customers. *See* Ex. A, ¶ 2. Since departure from OLA in November 2021, Boyd

has worked for Jacam 2013 (the company suing Zaid, as described above) as a Business

Development Manager. *Id.* at ¶ 5.

Boyd's limited interactions with Zaid were in connection with Boyd's work on behalf of

OLA when Zaid's company, GeoChemicals, participated in a request for proposals ("RFP") for an

OLA customer. *Id.* at ¶ 6. On two occasions, GeoChemicals failed to provide the required chemical

samples to OLA to allow testing in connection with the RFP. *Id.* at ¶ 7. Boyd found this notable,

as he is not aware of any other company failing to provide samples for testing after participating

in a RFP and neither Zaid nor anyone else from GeoChemicals offered any explanation for the

failure to provide the samples. *Id.* at ¶ 7. Based on Boyd's experience of Zaid's company twice

failing to provide required samples for testing after participating in an RFP, he expressed his

opinion about GeoChemicals to OLA customers in connection with his work on behalf of OLA.

*Id.* at ¶ 8. All statements Boyd made regarding GeoChemicals were in the course of his job duties

for OLA and intended to benefit OLA's customers. *Id.*

## II. THE CLAIM

On March 24, 2022, Zaid filed this lawsuit against Boyd alleging defamation. Zaid alleges

that Boyd made "false and defamatory" statements about Zaid:

- Boyd made false and defamatory statements to representatives of numerous oil and gas producers with headquarters around the United States, including, without limitation, in Colorado, Kansas, North Dakota, Oklahoma, and Texas, about Zaid, individually. (¶14)

- Boyd's statements included that Zaid stole all of Jacam 2013's formulas; that Zaid is a common thief; and that Zaid will be going to jail after Jacam 2013's civil case against Zaid and GeoChem. (¶15)

- Boyd's statements were made both while he was employed by OLA, and now he continues to make such statements while employed by Jacam 2013, defaming Zaid. (¶16)

- Boyd's statements have been made to individuals at the following entities: Crestone Peak Resources, LLC while Boyd was working at OLA; Extraction Oil and Gas Inc. both while Boyd worked at OLA and now while employed by Jacam 2013; and to Kaiser-Francis Oil Company in the last few weeks while employed by Jacam 2013. (¶17)

- Boyd's representations to third parties that Zaid is a criminal and has engaged in criminal activity are patently false, defamatory, and extremely harmful to Zaid's reputation. (¶19)

- Boyd's statements were and continue to be false and defamatory, and have exposed Zaid to public contempt and ridicule. (¶21)

- Boyd's statements were and continue to be made to third parties, such as oil and gas producers, who are in the same industry as Zaid. (¶22)

- Zaid's personal and business reputations have been and continue to be harmed by Boyd's statements, as they have deprived Zaid of the benefits of social acceptance and public confidence. (¶23)

- These statements and the damage to Zaid's reputation have caused significant damages to his reputation. (¶24)

### III.    ARGUMENT & AUTHORITIES

#### A.    The Kansas Public Speech Protection Act

Thirty-two states and the District of Columbia have enacted laws to address what are called "strategic lawsuits against public participation" or "SLAPPs," which have a chilling effect on free speech. "The hallmark of these statutes is the ability of a defendant to file an early 'motion to strike' so the court can make an initial determination whether the lawsuit has been filed to harass the defendant or to stifle the defendant's right of free speech." *T&T Fin. of Kansas City, LLC v. Taylor*, 408 P.3d 491, 2017 WL 6546634, at *3 (Kan. App. 2017)(unpublished)(<u>Exhibit B</u>).

Kansas passed the Public Speech Protection Act to protect against "meritless lawsuits that chill free speech." *Caranchini v. Peck*, 355 F.Supp.3d 1052, 1055 (D. Kan. 2018)(<u>Exhibit C</u>). "The stated purpose of the statute is to 'encourage and safeguard the constitutional rights of a person to petition, and speak freely and associate freely, in connection with a public issue or issues of public interest … while, at the same time, protecting the rights of a person to file meritorious lawsuits for demonstrable injury." *Id*. at 1055 (citing KSA §60-5320(b)).  The Kansas Legislature expressed its intent that courts apply and liberally construe the Kansas anti-SLAPP statute "to effectuate its general purposes."  KSA §60-5320(k).

Where a claim is based on, relates to or is in response to a party's exercise of the right of free speech, right to petition, or right of association, the Public Speech Protection Act allows the defendant to move to strike the claim.  KSA §60-5320(d).  If the moving party meets its prima facie burden of showing the claim falls within the ambit of the statute, the burden shifts to the plaintiff to "establish a likelihood of prevailing on the claim by presenting substantial competent evidence to support a prima facie case" on its claim. *Id*. If the plaintiff is unable to meet this burden,

the court must grant the motion to strike, dismiss the claim, and award costs, fees, and sanctions where warranted to deter similar conduct. KSA §60-5320(g).

**B.    The Kansas Public Speech Protection Act Applies in Federal Diversity Actions**

In *Caranchini*, in an issue of first impression, Judge Murguia held that the Kansas Public Speech Protection Act "applies in federal diversity actions because it 'exist[s] to influence substantive outcomes, and … is so bound up with a state-created right or remedy that it defines the scope of that substantive right or remedy." 355 F.Supp.3d at 1061. In reaching this holding, Judge Murguia extensively analyzed decisions from the Tenth Circuit and other circuit courts of appeal. The *Caranchini* court noted that the only decision from the Tenth Circuit on this issue, *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 668 (10th Circ. 2018), addressed the applicability of the *New Mexico* anti-SLAPP statute, which the court observed is "unlike many other states' anti-SLAPP statutes that shift substantive burdens of proof or alter substantive standards," and thus is "not binding on whether this court can apply the *Kansas Act* in a federal diversity action. 355 F.Supp.3d at 1057.

In the opinion, Judge Murguia stated the court's belief that "the Tenth Circuit would agree with this outcome based on its dicta in *Los Lobos*": there, the Tenth Circuit noted that anti-SLAPP statutes "that shift substantive burdens of proof or alter substantive standards" are unlike the New Mexico anti-SLAPP statute, "which has no bearing on the suit's merits determination and is *strictly procedural*." *Id.* at 1061 (emphasis added). Judge Murguia concluded "[t]herefore, **statutes that shift burdens of proof—like the Kansas Act—are more substantive in nature than the New Mexico statute, and are more likely to apply in a federal diversity action.**" *Id.* at 1061. (emphasis added).

**C.    Zaid's Defamation Claim is Based on Speech Protected by KSA §60-5320**

The Kansas Public Speech Protection Act protects three general classes of protected speech:

1. <u>Exercise of the right of free speech</u>, defined as "a communication made in connection with a public issue or issue of public interest." KSA §60-5320(c)(1) "Public issue or issue of public interest" includes an issue related to (A) health or safety (B) environment, economic, or community well-being, (C) the government, (D) a public official or public figure, or (E) a good, product, or service in the marketplace. KSA §60-5320(c)(7).

2. <u>Exercise of the right to petition</u>, which includes 13 categories of protected communications, including "a communication in connection with an issue under consideration or review by a … judicial … proceeding." KSA §60-5320(c)(5)(A), (5)(B)-(E).

3. <u>Exercise of the right of association</u>, defined as "a communication between individuals who join together to collectively express, promote, pursue or defend common interests." KSA §60-5320(c)(5)(A).

The first step of a court's inquiry when facing a motion to strike under the Kansas Act is to determine whether the asserted claim concerns a party's exercise of the right of free speech, right to petition or right of association. "Step one of the analysis … only concerns the *content* of the claims," not the motive, merits, or whether the defendant admits or denies the allegations. *T&T Fin.*, 2017 WL 6546634, at *5. The Kansas Act does not limit protected speech to activity protected by constitutional law – instead, the Kansas legislature "'spelled out the kinds of activity it meant to protect,' then mandated that its statutory language be liberally construed." *Doe v. KSU*, 61 Kan.App.2d 128, 144, 499 P.3d 1136, 1148 (Kan. App. 2021).

### 1.    Plaintiff's Defamation Claim Concerns Boyd's Right of Free Speech

The Act defines "exercise of the right of free speech" to mean "a communication made in connection with a public issue or issue of public interest." KSA §60-5320(c)(1). An "issue of public interest" includes issues related to "a good, product or service in the marketplace." *Id.* at

(c)(7). In interpreting the "exercise of the right of free speech," Kansas courts broadly interpret the Act's protections, as the legislature intended.

For example, in *Doe,* the court held that e-mail correspondence between representatives from two universities regarding the disciplinary actions taken and complaints made against a specific student concerned the right of free speech. 499 P.3d 1136 at 1140. Similarly, the *Caranchini* court held that the allegations related to the defendants' right of free speech where "Plaintiff allege[d] that defendants committed libel and slander while they were communicating in judicial proceedings (the TRO proceedings), or when they were petitioning the government (the District Attorney) regarding issues related to their safety (the filing of the TRO and the communications made during the commencement of the telephone harassment case)." 355 F.Supp.3d at 1062.

Courts in other jurisdictions have followed suit. For example, in *McDonald Oilfield Operations, LLC v. 3B Inspection, LLC,* interpreting the similar Texas anti-SLAPP statute, the court held that the purported comments that a company "was not a real company" and that its owner did not "know what he was doing" were statements concerning a matter of public concern and related to "a good, product, or service in the marketplace." 582 S.W.3d 732, 747 (Tex. App.—Houston [1st Dist.] 2019, no pet.).[1] And in *AOL, Inc. v. Malouf,* the court held that an article communicating that a dentist had been charged with "defrauding state taxpayer of tens of millions of dollars in Medicaid scam" related to a service in the marketplace, the dentist's provision of dental services. 2015 WL 1535669, at *2 (Tex. App.—Dallas April 2, 2015, no pet.)(mem. op.); *see also Krimbill v. Talarico*, 417 P.3d 1240, 1249-1250 (Okla. Civ. App. 2017)(upholding district

---

[1] Decisions from Texas and Oklahoma are persuasive, since both the Texas and Oklahoma anti-SLAPP statutes are virtually identical in relevant aspects to the Kansas Act.

court's finding, interpreting the similar Oklahoma anti-SLAPP statute, that e-mail regarding individual's leadership issues was related to "a good, product, or service in the marketplace").

Here, Zaid's claim is based on statements allegedly made by Boyd regarding oilfield chemicals that are sold and purchased within the petrochemical industry—clearly constituting a communication regarding "a good, product, or service in the marketplace." Boyd's alleged statements are no different than those courts have found to be an "exercise of the right of free speech." *See, e.g., Doe*, 499 P.3d at 1140; *Carachini*, 355 F.Supp.3d at 1062; *McDonald Oilfield Operations, LLC*, 582 S.W.3d at 747; *AOL, Inc.*, 2015 WL 1535669, at *2; *Krimbill*, 417 P.3d at 1249-1250.

## 2. Zaid's Defamation Claim Concerns Boyd's Right of Association

The Kansas Act defines "exercise of the right of association" to mean "a communication between individuals who join together to collectively express, promote, pursue or defend common interests." *See* K.S.A. §60-5320(c)(3). Interpreting this provision, the *Doe* court held that the same communications regarding a student's past disciplinary record that constituted an "exercise of the right of free speech" also constituted an "exercise of the right of association," as both university officials shared a common interest in student safety and welfare. 499 P.3d at 1140. Similarly, in *Backes v. Misko,* the court held that social media posts regarding horse breeding fell within the purview of the right of association, as the participants shared a common interest. 486 S.W.3d 7, 20-21 (Tex. App.—Dallas 2015, pet. denied). Here, Boyd's alleged communications regarding Zaid were with OLA customers who shared Boyd's interest in petrochemicals, as evidenced by the fact that both worked within that same industry. Therefore, Boyd's alleged communications concerned his right of association and are covered by the Kansas Public Speech Protection Act.

### 3.    Zaid's Defamation Claim Does Not Concern "Commercial Speech"

Like other states' anti-SLAPP statutes, the Kansas Act includes a "commercial speech" exemption: it does not apply to "a claim brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods . . . or a commercial transaction in which the intended audience is an actual or potential buyer or customer." KSA §60-5320(h)(2). While it appears that Kansas courts have not yet had an opportunity to analyze the commercial speech exemption, courts in other jurisdictions with identical commercial speech exemptions offer instructive guidance, emphasizing that the exemption is to be construed narrowly and that it is the plaintiff's burden to establish its application. *See ADB Interest, LLC v. Wallace*, 606 S.W.3d 413, 428 (Tex. App.—Houston [1st Dist.] 2020, pet. filed).

Construing an identical commercial speech exemption, the Texas Supreme Court held that the exemption applies only when (1) the defendant was primarily engaged in the business of selling or leasing goods, (2) the defendant made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services, (3) the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant provides, and (4) the intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods of services the defendant provides. *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688-91 (Tex. 2018)(exemption did not apply because the "allegedly defamatory statement did not arise out of his sale of goods or services or his status as a seller of those goods and services," and defendant was not pursuing business for himself and did not "[stand] to profit from the statements at issue."); *see also ADB Interest, LLC*, 606 S.W.3d at 430. In *Krimbill*, the court, looking to Texas law for guidance, held

the following elements must be present for the "commercial speech" exemption to apply: (1) the parties are involved in the same general area of business; and (2) the statements forming the basis of the suit were made at least partially for the purpose of promoting sales of the goods or services of the person making the statement. 417 P.3d at 1251 (exemption did not apply because "it would be speculative at best for [it] to determine that Defendants and [Plaintiff] are involved in the same business, or that Defendants made the statements at issue to promote their business aims."); *see also Muddy Waters, LLC v. Superior Court*, 277 Cal.Rptr.3d 204, 216-17 (Cal. Ct. App. 2021)(commercial speech exception did not apply because "[t]here is no evidence to suggest that Muddy Waters is a business competitor of plaintiff ….").

The "commercial speech exemption" does not apply here. First, the audience of the alleged statements were OLA customers, "not actual or potential customers" of *Defendant* as required by the statute. *See* Ex. A, ¶ 8. Second, the statements did not arise out of the sale of those goods and were not made to promote Boyd's (or, for that matter, OLA's) business aims, as Boyd is not a competitor of Zaid (or even his company, GeoChemicals). *See id.* at ¶ 3.

**D.      Zaid Cannot Meet His Burden of Establishing a Likelihood of Prevailing on His Claim by Substantial Competent Evidence to Support a Prima Facie Case of Defamation**

**1.      <u>Zaid Lacks Substantial Competent Evidence of Defamation</u>**

Under the Kansas Act, once the movant meets it burden of establishing that the Act applies to the plaintiff's claim, "the burden shifts to the responding party to establish a likelihood of prevailing on the claim *by presenting substantial competent evidence to support a prima facie case."* KSA §60-5320(d) (emphasis added). "Substantial competent evidence" means "legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion." *Fisher v. Kansas Dept. of Revenue*, 58 Kan. App. 2d 421, 423, 471 P.3d 710 (2020).  At this step,

the Court may consider pleadings and affidavits, but does not accept the facts in the petition as true, since this "would defeat the obvious purposes of the anti-SLAPP statute if mere allegations in an unverified complaint would be sufficient to avoid an order to strike the complaint." *Doe*, 61 Kan. App. 2d at 148 (quoting *DuPont Merck Pharm. Co. v. Superior Ct.*, 78 Cal. App. 4th 562, 568 (2000), *as modified* (Jan. 25, 2020)). Importantly, baseless opinions and conclusory statements by the plaintiff will not suffice. *See Fisher*, 58 Kan. App. 2d at 423.

Under Kansas law, the elements of a defamation claim are (1) false and defamatory words, (2) communicated to a third person, (3) which result in harm to the reputation of the person defamed. *Lloyd v. Quorum Health Resources, LLC*, 31 Kan. App. 2d 943, 945, 77 P.3d 993 (2003). A defamation plaintiff must allege and prove *actual* damages and cannot rely on the theory of presumed damage. *Zoeller v. American Family Mut. Ins. Co.*, 17 Kan. App. 2d 223, 229, 834 P.3d 391 (1992). Further, "a defamation complaint cannot couch allegations of falsity in vague, conclusory terms." *Brokers' Choice of Am., Inc. v. NBC Univ., Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017).

Here, Zaid fails to meet his burden on two fronts. First, his bare bones petition, unsupported by verification, affidavit, or any evidence, offers nothing in the way of specific facts to support his defamation claim. Instead, the petition consists of generalities and generic statements that the alleged statements were "false" and "defamatory" without more. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."); *Smith-Utter v. Kroger Co.*, 2009 WL 790183, at *3 (D. Kan. March 24, 2009)("Plaintiff's unsupported allegations are insufficient to demonstrate that her reputation was harmed.").

Second, compounding this fatal lack of detail is Zaid's failure to offer any factual specifics to support his alleged "reputational damages." Instead, he relies solely on conclusory allegations that his "personal and business reputations" have been harmed, with no support. Kansas courts have repeatedly held that such conclusory allegations fail to establish a valid claim for defamation. *See, e.g., Ablulimir v. U-Haul of Kansas*, 2011 WL 2731774, at *3 (D. Kan. July 13, 2011); *Doe*, 61 Kan. App. 2d at 150; *Rx Sav., LLC v. Besch*, 2019 WL 8014669, at *4 (D. Kan 2019); *Lindemuth v. Goodyear Tire & Rubber Co.,* 19 Kan. App. 2d 95, 103, 864 P.2d 744 (1993) ("injuries to one's sensitivities alone is not enough to support a claim for defamation. The plaintiff must show how his or her true reputation in the community of his or her residence has been affected."); *Davis v. Hildyard*, 34 Kan. App. 2d 22, 30, 113 P.2d 827 (2005) ("Broad and factually unsupported allegations of patient cancellations do not support a claim for damages for alleged defamation."); *Snyder v. American Kennel Club*, 661 F.Supp.2d 1219, 1239 (D. Kan. 2009)("Under Kansas law, a plaintiff in a defamation action cannot rest on presumed damages, but must *prove* damages.")(emphasis added).

With regard to the requisite proof of damages, this Court has held that "Plaintiff must provide some evidence that Defendant's statements caused identifiable damage to her reputation." *Smith-Utter*, 2009 WL 790183, at *3. This standard "entails showing that persons were deterred from associating with plaintiff, that plaintiff's reputation has been lowered in the community, or that the plaintiff's profession suffered. Injury to plaintiff's own sensibilities is not enough to support a defamation claim." *Id.* Zaid falls far short of providing substantial competent evidence to support the damages element of his defamation claim. *See generally Doe*, 61 Kan. App. 2d at 150-51.

## 2.     The Communications at Issue are Privileged and Not Actionable

Zaid's problems do not end there: even if he were able to provide substantial competent evidence, the communications he alleges are subject to a qualified privilege under Kansas law since they were made in the course of Boyd's employment. The Kansas Supreme Court has made clear that the qualified privilege applies to communications similar to those at issue:

> A qualified or limited privilege is granted to those with a special interest or duty in the subject matter of the communication. The availability of a limited privilege is generally restricted to those situations where public policy is deemed to favor the free exchange of information over the individual's interest in his or her good reputation. **One such qualified privilege exists with respect to business or employment communications made in good faith and between individuals with a corresponding interest or duty in the subject matter of the communication**.

*Turner v. Halliburton Co.*, 722 P.2d 1106 (Kan. 1986)(emphasis added). Applying this same principle, the Kansas Supreme Court previously held that an employer possessed a qualified privilege to communicate information regarding the discharge of a former employee to its customers. *See High v. A.J. Harwi Hardware Co.*, 223 P. 264, 269 (Kan. 1924). The Court noted:

> Satisfactory business relations between wholesale dealer and customer, maintained by mutual good will, confidence, and understanding, are not merely desirable, but are valuable to each. When those relations are likely to be disturbed, strained, or broken, on account of lack of knowledge or misinformation on the part of the customer of the cause of an incident directly affecting the relationship, dealer and customer have a mutual interest in the matter.

*Id.* at 268-269.

"Where a defamatory statement is made in a situation where there is a qualified privilege the injured party has the burden of proving not only that the statements were false, but also that the statement were made with actual malice—*with actual evil-mindedness or specific intent to injure*." *Lloyd*, 31 Kan. App. 2d at 952, 77 P.3d 993 (citing *Turner v. Halliburton Co.*, 240 Kan. 1, 8, 722 P.2d 1106 (1986)). "Proof of malice in defamation actions when a qualified privilege is found to exist requires a plaintiff to prove that the publication was made with knowledge that the

defamatory statement was false or with reckless disregard of whether it was false." *Smith-Utter*, 2009 WL 790183, at *4; *Smith v. Williams*, 2021 WL 4745713, at *4 (D. Kan. Oct. 12, 2021). Zaid, who has not even alleged malice, is unable to meet this heightened burden. As a result, Zaid is unable to establish a likelihood of success on his defamation claim and this Court must dismiss his claim.

### E.     Zaid Fails to State a Claim Upon Which Relief May be Granted

In the alternative, Zaid's sole claim must be dismissed under Federal Rule of Civil Procedure 12(b)(6) because it does not state a claim upon which relief may be granted. As set forth in greater detail above, generalities and conclusory allegations regarding alleged "reputational damage" are insufficient to support a defamation claim under Kansas law, and courts routinely dismiss defamation claims on this basis. *See, e.g.*, *Ablulimir*, 2011 WL 2731774, at *3 (dismissing slander claim where nothing in the "pleadings can be construed to allege that [plaintiff's] reputation in the community was damaged."); *Garcia v. Tyson Foods, Inc.*, 890 F.Supp.2d 1266, 1271-1272 (D. Kan. 2012)(dismissing defamation claim because it "is defective in its failure to allege damage to [plaintiff's] reputation"); *RX Savings, LLC v. Besch*, 2019 WL 8014669, at *3 (D. Kan. Oct. 11, 2019)(defamation counterclaim would be subject to dismissal "because defendants have not adequately pleaded with specificity and have not adequately alleged damages."). Therefore, if the Court does not strike Plaintiff's claim under the Kansas Public Speech Protection Act, it must do so under Rule 12(b)(6).

### IV.     STAY OF DISCOVERY PENDING RESOLUTION

KSA §60-5320(e)(2) provides that "all discovery, motions or other pending hearings shall be stayed upon the filing of the motion to strike" and "stay of discovery shall remain in effect until entry of the order ruling on the motion except that the court, upon motion and for good cause

shown, may order that specified discovery, motions or other pending hearings be conducted." Boyd requests that the Court stay all discovery and motions pending resolution of this Motion consistent with the statute.

## V.  AWARD OF COSTS, FEES & SANCTIONS

KSA §60-5320(g) provides that the Court "shall award the defending party, upon a determination that the moving party has prevailed on its motion to strike . . . (1) Costs of litigation and reasonable attorney fees; and (2) such additional relief, including sanctions upon the responding party and its attorneys and law firms, as the court determines necessary to deter repetition of the conduct by others similarly situation." Upon dismissal of Zaid's claim pursuant to the Kansas Public Speech Protection Act, Boyd requests that the Court award his costs of litigation, attorneys' fees, and additional relief including sanctions to deter repetition of Boyd's conduct—bringing baseless claims—by others similarly situated.

## VI.  CONCLUSION

The Kansas Public Speech Protection Act protects Boyd from unsupported and unsupportable allegations of "defamation" intended to chill his protected speech and entitles him to an early dismissal of the Zaid's claim.  The Act forces Zaid to "put his money where his mouth is" or be subject to the Court striking the claim and ordering that he pay Boyd's attorneys' fees and costs and sanctions.

Because (1) Boyd has met his burden of establishing that the alleged statements are protected activities under the Kansas Public Speech Protection Act, and (2) Zaid lacks the requisite substantial competent evidence of the elements of his defamation claim, including the alleged damages, Boyd respectfully requests that following a hearing, the Court strike the Zaid's claim, award Boyd his costs, attorneys' fees, and sanctions sufficient to deter similar conduct, and enter

such other and further relief as the Court deems just and proper. Boyd further requests that the

Court dismiss Zaid's lawsuit for failure to state a claim upon which relief may be granted pursuant

to Rule 12(b)(6).

Respectfully submitted,


  /s/ Ryan M. Peck
Ryan M. Peck, #21223
MORRIS, LAING, EVANS, BROCK
   & KENNEDY, CHARTERED
300 N. Mead, Suite 200
Wichita, KS 67202
Telephone: (316) 262-2671
Fax: (316) 262-6226
rpeck@morrislaing.com
*Attorneys for Defendant Jason R. Boyd*

and


PHILLIPS MURRAH PC


/s/ Janet A. Hendrick
Janet A. Hendrick, Pro Hac Vice
PHILLIPS MURRAH P.C.
3710 Rawlins Street, Suite 900
Dallas, Texas 75219
Telephone: 469-485-7334
Facsimile: 214-434-1370
Email: jahendrick@phillipsmurrah.com
*Attorneys for Defendant Jason R. Boyd*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 5th, 2022 I electronically filed the above and foregoing with the clerk of the court by using the CM/ECF system, plus a copy was served via electronic mail to the following:

 Sean D. Walsh
 Matthew K. Holcomb
 Scott R. Schillings
 HINKLE LAW FIRM LLC
 1617 N. Waterfront Parkway, Ste. 400
 Wichita, KS 67206
 swalsh@hinklaw.com
 mholcomb@hinklaw.com
 sschillings@hinklaw.com

 *Attorneys for Plaintiff*

       */s/ Ryan M. Peck*     
       Ryan M. Peck