IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GENE H. ZAID,
        *Plaintiff,*

vs.

C.A. NO. 6:22-cv-01089-EFM-GEB

JASON R. BOYD
        *Defendant.*

## PLAINTIFF'S RESPONSE TO DEFENDANT'S ANTI-SLAPP
## MOTION TO STRIKE AND/OR MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

COMES NOW Plaintiff Gene H. Zaid, by and through his counsel of record, and submits his Response in Opposition to Defendant's Anti-Slapp Motion to Strike and/or Motion to Dismiss Pursuant to Rule 12(b)(6). In support of the same, Plaintiff states as follows:

## I.    INTRODUCTION

Boyd seeks an order from the Court striking Zaid's defamation claim as meritless under the Kansas Public Speech Protection Act found at K.S.A. § 60-5320 (the "KPSPA"), or alternatively for failure to state a claim under Fed. R. Civ. P. 12. Though Boyd relies heavily on Texas case law because the "Texas and Oklahoma anti-SLAPP statutes are ***virtually identical*** in relevant aspects to the Kansas Act" (Dkt. 14 p. 7, FN 1) (emphasis added), he fails to alert this Court that the Fifth Circuit (which covers Texas) and the District of Kansas in a more recent case than *Caranchini* have determined that the Texas anti-SLAPP statute is inapplicable in Federal Diversity actions. This Court should find the same is true with respect to the "***virtually identical"*** KPSPA, that is, it does not apply in federal diversity actions because it is procedural.

Additionally, Boyd misrepresents the defamatory statements he made in an effort to reshape the allegations of the Petition and fit them into categories of protected speech in the KPSPA. Thus, even if the KPSPA applies in a federal diversity action, which it does not, Boyd's

statements still do not meet the statutory definitions contained in the KPSPA. And even if this Court believes the communications do fall into the categories protected in the KPSPA, the KPSPA still does not apply because the statements, if Boyd's characterizations are followed, are exempted from application of the statute under the commercial speech exemption of K.S.A. § 60-5320(h)(2).

Moreover, Zaid has a meritorious claim and can present substantial competent evidence to support a prima facie case sufficient to establish a likelihood of prevailing on the claim. Boyd told multiple people that Zaid is a common thief, and stated that Zaid was going to jail. Boyd's statements were intended to, and did, cause reputational harm to Zaid in order to lessen Zaid's reputation, standing, and respect in the community. It is hard to envision statements more harmful to an individual than those calling him a common thief or indicating he is going to jail. Therefore, Zaid makes a prima facie case for defamation, and the Court should deny Boyd's motion to strike. Having made a prima facie case by presenting substantial competent evidence, Zaid necessarily satisfies the lesser burden to state a claim under the notice pleading standard of Fed. R. Civ. P. 8(a)(2). Zaid has asserted sufficient factual allegations to state a claim for defamation and Boyd's Motion to Dismiss should also be denied.

## II.    ARGUMENTS AND AUTHORITIES

### A.    Federal Courts in Diversity Actions Should Not Apply the KPSPA because Federal Rules 12 and 56 Answer the Same Question as the KPSPA, Namely "the Circumstances under which a Court Must Dismiss a Case before Trial."

Before an analysis of Kansas anti-SLAPP law is even necessary, a larger issue looms before this Court that must first be addressed, and that is the KPSPA should not apply in a federal action sitting in diversity. One of this Court's sister courts, in *Orchestrate HR, Inc. v. Blue Cross Blue Shield Kan.*, called into question the potential applicability of anti-SLAPP laws

to federal courts sitting in diversity. No. 5:19-CV-04007-HLT-TJJ, 2019 WL 6327591, at *5 (D. Kan. Nov. 26, 2019). The Honorable Judge Teeter in *Orchestrate* held that the provisions of the Texas Citizens Participation Act ("TCPA"), Texas' anti-SLAPP law, could not be used to file a motion to dismiss in federal court. *Id.* at *3. Although the court addressed the application of the TCPA, a Texas law, in a federal court, and here we address the KPSPA, the opinion provides a well-guided analysis of the direction of circuit courts, including the Tenth Circuit, to hold that state anti-SLAPP statutes are ***not*** applicable to federal courts sitting in diversity. *See, e.g., Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 662 (10th Cir. 2018), cert. denied, 139 S. Ct. 591 (2018) (New Mexico anti-SLAPP law not applicable in federal court); *Klocke v. Watson*, 936 F.3d 240, 245 (5th Cir. 2019) (Texas anti-SLAPP law not applicable in federal court); *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1351 (11th Cir. 2018) (Georgia anti-SLAPP law not applicable in federal court); *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1332 (D.C. Cir. 2015) (D.C. anti-SLAPP law not applicable in federal court). This Court should recognize the trend against applying state anti-SLAPP law to federal courts sitting in diversity and decline to apply the KPSPA to this case.

The analysis provided in *Orchestrate* relies largely on the interpretations made by the Fifth Circuit Court of Appeals in *Klocke*, which held that the TCPA does not apply in federal court. 2019 WL 6327591, at *5; 936 F.3d at 242. Although the current case requires an interpretation of the applicability of the KPSPA in federal court, this should not sway this Court from following in the footsteps of the Fifth Circuit and Judge Teeter. Judge Teeter in a footnote provided the following discussion of how the Tenth Circuit has resolved this same issue regarding New Mexico anti-SLAPP law:

It appears that the Tenth Circuit has only addressed the applicability of New Mexico's anti-SLAPP law in a diversity case. The outcome here—not applying a state anti-SLAPP law in a federal diversity action—is at least consistent with that Tenth Circuit authority. In *Los Lobos*, the Tenth Circuit held that New Mexico's anti-SLAPP law does not apply in federal court. Focusing on the distinction between procedural and substantive laws, the Tenth Circuit concluded that the New Mexico law was not a close call, finding that it was "nothing more than a procedural mechanism designed to expedite the disposal of frivolous lawsuits aimed at threatening free speech rights." [885 F.3d] at 668-69. The Court notes that *Los Lobos* involved an anti-SLAPP statute that was perhaps more limited than other anti-SLAPP statutes, including the TCPA. *See id.* at 670 ("Unlike many other states' anti-SLAPP statutes that shift substantive burdens of proof or alter substantive standards, or both, under no circumstance will the New Mexico anti-SLAPP statute have any bearing on the suit's merits determinations."). But the Tenth Circuit did not go further and indicate how the analysis on an arguably more extensive statute like the TCPA would play out.

*Orchestrate*, 2019 WL 6327591, at *5 n.5. This tends to indicate that, as far as applying a more extensive anti-SLAPP statute like K.S.A. § 60-5320(d), this remains an open question. *See id.*

Generally, in diversity actions, federal courts apply state law to resolve substantive issues and federal law for procedural ones. *Los Labos*, 885 F.3d at 668. This determination is easier said than done, as the line between substantive and procedural law is not a clear one. *See id.* However, federal courts are in agreement that, as far as it relates to anti-SLAPP statutes, this question is not resolved through a typical *Erie* inquiry, but rather "concern[s] the relationship between the Federal Rules of Civil Procedure and a state statute that governs both procedure[] and substance in the state courts." *Caranchini v. Peck*, 355 F. Supp. 3d 1052, 1058 (D. Kan. 2018). Importantly, federal courts should not apply a state law if "(1) a Federal Rule of Civil Procedure 'answer[s] the same question' as the state law or rule and (2) the Federal Rule does not violate the Rules Enabling Act." *Abbas*, 783 F.3d at 1333 (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398–99, 130 S. Ct. 1431, 176 L. Ed. 2d 311

(2010)). Indeed, the framework of whether the state law and federal law answer the same question was critical to Judge Teeter in *Orchestrate*. *See Orchestrate*, 2019 WL 6327591, at *2.

This then begs the question: is the KPSPA a procedural law, or a substantive one? In *Los Lobos*, the only Tenth Circuit authority on this issue, the court largely employed the analysis of a New Mexico state court to substantiate its holding that New Mexico anti-SLAPP law is procedural in nature, which would preclude its application in federal court. 885 F.3d at 669. The court cited to *Cordova v. Cline*, 2017- NMSC 020, 396 P.3d 159 (N.M. 2017), identifying that "[t]he New Mexico Supreme Court… supports [the Tenth Circuit's] reading of the [New Mexico] anti-SLAPP statute to a tee." *Id.* The Tenth Circuit continued, identifying that the New Mexico Supreme Court indicated "the [New Mexico] Anti-SLAPP statute provides the *procedural* protections [defendants] require…" *Id.* Further, New Mexico's Supreme Court identified that "[the defendants were] entitled to the *procedural* protections of the New Mexico [anti-SLAPP] statute." *Id.*

Likewise in this case, turning to Kansas's interpretation of the KPSPA supports a finding that it is procedural, and should not apply in federal diversity actions. In *T & T Fin. of Kansas City, LLC v. Taylor*, No. 117,624, 2017 WL 6546634, at *4 (Kan. Ct. App. 2017), the court directly addressed the nature of K.S.A. § 60-5320(d) as follows: "Getting to the heart of the statute, K.S.A. 2016 Supp. 60-5320(d) provides a ***procedural*** remedy early in the litigation for those parties claiming to be harassed by a SLAPP lawsuit." (emphasis added). Two other Kansas state court opinions also cited favorably to this characterization. *Doe v. Kansas State Univ.*, 61 Kan. App. 2d 128, 135, 499 P.3d 1136, 1143 (2021) (stating that the Act provides a ***procedural*** remedy early in the litigation for those parties claiming to be harassed by a SLAPP lawsuit, analogous to a summary judgment procedure); *Kemmerly v. Wichita Eagle*, No. 124,220,

2022 WL 1436399, at *2 (Kan. Ct. App. May 6, 2022). So, the answer is clear: Kansas state courts interpret the KPSPA as procedural.

Because the KPSPA is procedural, both a motion under K.S.A. § 60-5320(d) and motions under Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 56(a) answer the same question, *i.e.*, should a claim be dismissed prior to trial. *See Klocke*, 936 F.3d at 245. Such a procedural conflict cannot exist in federal court. All that remains then is to determine if Fed. R. Civ. P. 12 and 56 violate the Rules Enabling Act, which the Supreme Court has directly held do not. *See Shady Grove*, 559 U.S. at 407. Consequently, with (1) an understanding that K.S.A. § 60-5320(d) is a procedural mechanism that answers the same question as two different Federal Rules of Civil Procedure and (2) an ironclad position among federal courts that Fed. R. Civ. P. 12 and 56 do not violate the Rules Enabling Act, this Court should hold that the procedural mechanisms of the KPSPA cannot be applicable in federal court sitting in diversity.

Lastly, Plaintiff recognizes that this same District through Judge Murguia previously held in *Caranchini v. Peck*, 355 F. Supp. 3d 1052, 1061 (D. Kan. 2018) that Kansas anti-SLAPP law was applicable in a federal diversity case. However, Judge Teeter again addressed why such decision may be in question in the following footnote by flagging an important chronology:

> The Court recognizes that another judge in the District of Kansas has held that the Kansas anti-SLAPP law does apply in federal court. *Caranchini*, 355 F. Supp. 3d at 1061. But that case was decided before the Fifth Circuit's decision in *Klocke* and the Eleventh Circuit's decision in *Carbone*. More importantly, *Caranchini* analyzed Kansas's anti-SLAPP law, not the TCPA, which, though similar, are not identical. *Compare* Tex. Civ. Prac. & Rem. § 27.005, with K.S.A. § 60-5320(d). Accordingly, the Court concludes that *Caranchini* is inapposite to the question of whether the TCPA applies in federal court in diversity cases, especially in light of the decision in *Klocke*.

*Orchestrate*, 2019 WL 6327591, at *5–6 n.6. Judge Teeter noted the importance of the timing of the relevant decisions on this issue, and without the analysis provided in two different circuits'

holdings that two different states' anti-SLAPP law was not applicable in federal court, particularly that of *Klocke* regarding the very similar TCPA, it is hard to determine where Judge Murguia would have landed on this issue if these opinions were available when his decision was rendered. *See id.* Additionally, using the same logic, Judge Murguia also did not have access to the Kansas state court decisions in *Doe* (2021) and *Kemmerly* (2022), which describe the KPSPA as procedural in nature, thereby removing any uncertainty regarding how Kansas state courts treat the KPSPA. Further, it is interesting to note that although the Defendant cites heavily to Texas case law on the TCPA, and repeatedly argues to this Court the persuasive nature of those cases interpreting "the similar Texas anti-SLAPP statute" (Dkt. 14 p. 7), he fails to address that the Fifth Circuit does not apply the TCPA in federal diversity actions. *Klocke*, 936 F.3d at 245.

Regardless, because the KPSPA is procedural, it must not be allowed to compete against the procedural remedies of Rule 12 and Rule 56. Both the KPSPA and Rules 12 and 56 address the identical issue: when a defendant can procedurally seek dismissal in advance of trial. This inherent identity is evidenced further by the fact that Defendant moves for dismissal under both the state and federal statute. The KPSPA and federal rules of procedure cannot coexist. Plaintiff should not be forced to defend both state and federal procedural mechanisms while litigating in federal court. Defendant is the one that chose to remove this matter to federal court even though he could have taken full advantage of the Kansas Rules of Civil Procedure if he wanted to by staying in state court, and he cannot now seek to take advantage of procedural rules he clearly chose to abandon by removal. Accordingly, this Court should find the KPSPA is not applicable in federal diversity actions and deny Defendant's motion.

**B. Legal Standard for Striking a Claim under the KPSPA**

Even if the KPSPA applies in a federal diversity action, which it should not for all the reasons stated above, Defendant's motion should still be denied. The KPSPA protects "the rights of a person to file meritorious lawsuits for demonstrable injury." K.S.A. 2020 Supp. 60-5320(b); *Doe*, 61 Kan. App. at 145. "[L]ike all anti-SLAPP statutes, is intended to prevent *meritless* lawsuits that chill individuals' exercise of their rights of free speech, association, and to petition." *Doe*, 61 Kan. App. at 145. "This does not mean that false accusations are protected by the First Amendment." *Caranchini*, 355 F. Supp. 3d at 1063. The statute is intended to prevent only *meritless* claims, not to prevent claims for false and defamatory statements that are not constitutionally protected.

"Getting to the heart of the statute, K.S.A. [2020] Supp. 60-5320(d) provides a procedural remedy early in the litigation for those parties claiming to be harassed by a SLAPP lawsuit." *T & T*, 2017 WL 6546634, at *4. The KPSPA "requires a two-step analysis for the district court to determine if the motion to strike should be granted." *Id*. In the first step, the moving party has the initial burden to show that the claim against which the motion is based concerns one of three categories of constitutionally protected rights. *Id*. The three categories listed and defined in the KPSPA are, "the right of free speech, right to petition or right of association." K.S.A. 60-5320(d). "[W]hether a party may properly bring a motion to strike turns solely on the contents of the plaintiff's claims." *Id*. Only if the movant meets this initial burden, then "the burden shifts to the responding party to establish a likelihood of prevailing on the claim by presenting substantial competent evidence to support a prima facie case." *Id*.; *T & T*, 2017 WL 6546634 at *4. "In ruling on a motion to strike, the district court shall consider the pleadings and affidavits

submitted by the parties." *Id.* Here, Defendant fails to meet the first step, as his speech is not protected.

**C.** **Boyd's Defamatory Speech Does Not Concern a Category of Free Speech, Right to Petition, or Right of Association Protected by the KPSPA.**

Boyd's Motion asserts only that Zaid's claim concerns his right of free speech and right of association. Boyd does not argue that Zaid's claim concerns his right to petition. Having abandoned any argument that the right to petition is concerned, Boyd cannot meet his burden to show that it does. Accordingly, this response does not address the right to petition.

**i.** **Boyd's defamatory statements are not an exercise of free speech.**

Under the KPSPA, "'[e]xercise of the right of free speech' means a communication made in connection with a public issue or issue of public interest." *Doe*, 61 Kan. App. 2d at 142 (quoting K.S.A. 60-5320(c)(4)). "'Public issue or issue of public interest' includes an issue related to: (A) Health or safety; (B) environmental, economic or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product or service in the marketplace." *Id.* (quoting K.S.A. 60-5320(c)(7)). Boyd relies exclusively on subsection (E), asserting without any analysis that his statements "regarding oilfield chemicals that are sold and purchased within the petrochemical industry" clearly constitute a communication regarding a good, product, or service in the marketplace. (Dkt. 14 p. 8).

Initially, the Court will not find allegations in Zaid's Petition about Boyd making statements "regarding oilfield chemicals that are sold and purchased within the petrochemical industry." (Dkt. 1-1 p. 2-5). Boyd misrepresents his statements that are actually the subject of Zaid's claims in an effort to distract this Court. Boyd states in his Motion and his Affidavit that the statements are "regarding oilfield chemicals that are sold and purchased within the

petrochemical industry" (Dkt. 14 p. 8); that "[b]ased on Boyd's experience of Zaid's company twice failing to provide required samples for testing after participating in an RFP, he expressed his opinion about GeoChemicals to OLA customers in connection with his work on behalf of OLA" (Dkt. 14 p. 2; Dkt. 14-1 ¶ 8); and "[a]ll statements Boyd made regarding GeoChemicals were in the course of his job duties for OLA and intended to benefit OLA's customers." (Dkt. 14 p. 2, Dkt. 14-1 ¶ 8). None of those allegations appear in the Petition. (Dkt. 1-1 p. 2-5).

Without question, Zaid's claims do _**not**_ concern any statements Boyd made regarding GeoChemicals or its alleged failure to submit samples. Rather, Zaid's claims are that Boyd made defamatory statements about Zaid individually; specifically, that Zaid is a common thief and that Zaid will be going to jail. The statements that are the subject of Zaid's claims have nothing to do with the chemicals that are sold and purchased within the petrochemical industry. In contrast, they are personal attacks on Zaid's character. The fact that Zaid and Boyd both work in the same industry does not magically transform Boyd's statements regarding Zaid's character and alleged criminal activity into statements regarding the chemicals, goods, products, or services that they both deal with. Boyd's statements simply do not meet the statutory definitions of the exercise of the right of free speech under the KPSPA because the communications at issue are not related to a good, product or service in the marketplace, but instead are aimed at damaging the character of an individual. Having failed to allege that any other "public issue or issue of public interest" is implicated in the defamatory statements that are the subject of Zaid's claim, Boyd has failed to meet his initial burden of showing that the claim concerns his exercise of the right of free speech.

Boyd cites to one Kansas Court of Appeals case and one District of Kansas case for examples of communications concerning free speech. But these two cases do not deal with

communications concerning a good, product, or service in the marketplace, so their reliance is frankly not instructive. Boyd then cites to two Texas state appellate decisions and one Oklahoma state appellate decision for examples of statements related to a good, product, or service in the marketplace. Each of these cases are easily distinguishable.[1]

*Doe* concerned an email communication between two representatives from two public universities regarding disciplinary actions taken and complaints of stalking and other unwanted behavior made against a specific student. *Doe*, 499 P.3d at 1140. The defendant in *Doe* was a government official, a public servant, and the communication was in response to a request from the other official at a separate university. *Id*. Her official duties included responsibility for communicating with other universities regarding student complaints and student safety. *Id*. The Court held that the communication concerned the right of free speech because the Defendant "was communicating on a public issue and an issue of public interest, *i.e.*, health, safety and community well-being of university students and more specifically, protection of university students from stalking and other unwanted behavior" because "student safety, including concerns about stalking, fall within the subject matter of health or safety and community well-being…" *Id*.

*Caranchini v. Peck* concerned statements about the defendant's safety made in paperwork filed in a criminal charge, statements made to the Assistant District Attorneys, and statements

---

[1] It is also worth noting that the TCPA was amended in 2019 to reign in the anti-SLAPP law, which "wreaked havoc in the state's courts, clogging the dockets of trial and appellate courts with expensive, complicated, and time-consuming litigation. Indeed, at one point in 2018 roughly 40 percent of the entire docket in the Dallas Court of Appeals consisted of TCPA cases." Matthew D. Bunker & Emily Erickson, The Jurisprudence of Public Concern in Anti-SLAPP Law: Shifting Boundaries in State Statutory Protection of Free Expression, 44 Hastings Comm. & Ent L.J. 133, 153 (2022). Texas previously contained the "laundry list" approach to defining what is included in "a matter of public interest" that was nearly identical to Kansas's current statute. *Id*. at 138. The TCPA no longer contains any reference to "a good, product or service in the marketplace." Likewise, to interpret the KCPA literally, that every communication that concerns a good, product or service in the marketplace relates to "a public issue or issue of public interest" would essentially remove the defendant's initial burden of showing that the claim is based on or relates to his exercise of the right of free speech because it would encompass nearly every conceivable communication.

made during a hearing on a temporary restraining order. 355 F. Supp.3d at 1061–62. Every statement that is the subject of the claim in *Caranchini* was made in judicial proceedings or to a government official in connection with a judicial proceeding. *Id.* Although the Court states that the communications related to the right to free speech and the right to petition, the analysis was based entirely on the right to petition, other than a brief mention that the communications were related to the defendants' safety. *Id*. at 1062. "The Act was intended to protect against lawsuits aimed at chilling speech such as this. Citizens should feel free to petition their government without fear of retribution. This includes sharing information with a prosecutor or filing a TRO." *Id.*

*McDonald Oilfield Operations, LLC v. 3B Inspection, LLC* concerned the defendant, McDonald's suspension of "Operator Qualifications" for individuals that were formerly independent contractors who left McDonald to work as employees of plaintiff, 3B Inspection; statements by McDonald related to those individuals taking McDonald's equipment; and statements by McDonald that 3B Inspection was "not a real company" and "did not 'know what he was doing." 582 S.W. 3d 732, 736–37 (Tex. App. 2019). Operator Qualifications are required by federal law for pipeline workers and demonstrate proper training. *Id*. McDonald, which sponsored and maintained the individuals' Operator Qualifications, asserted that it suspended the Operator Qualifications because of safety concerns and because "it was no longer in any position to monitor or supervise their performance or adherence to safety-related standards." *Id*. at 738. McDonald's affidavit very specifically identified the purpose of the Operator Qualifications and the highly dangerous nature of the individuals' duties. *Id*. at 737. The Court in *McDonald* primarily found that statements made by the defendant were "a matter of public concern because they concerned the qualifications and sponsorship of the individual

employees to perform certain tasks that could impact environmental, health, safety, and economic concerns associated with noxious and flammable chemicals transported through pipelines." *Id*. at 746. The Court continued, "[l]ikewise, the purported comments that 3B Inspection was 'not a real company' and that Beall did not 'know what he was doing' are statements concerning a matter of public concern as they related to 'a good, product, or service in the marketplace,'" but without any helpful analysis or explanation of how the statements relate to a good, product or service in the marketplace. *Id*. at 747. However, unlike here, Beall's knowledge and the establishment of a "real company" directly relate to the services provided by 3B Inspection and Beall—they are not merely spurious attacks on an individual's character.

Likewise, in *AOL, Inc. v. Malouf*, the Court found that an article that stated a dentist was criminally charged with defrauding state taxpayers of tens of millions of dollars in a Medicaid scam was the exercise of free speech under the TCPA because the statements were related to the health or safety, government, and community well-being. No. 05-13-01637-CV, 2015 WL 1535669, at *2 (Tex. App. Apr. 2, 2015). The Court also stated that the communication related to a service in the marketplace of plaintiff's provision of dental services. *Id*. Importantly, the plaintiff dentist did not dispute these matters. *Id*. Plaintiff's only arguments were that the statute did not apply to protect defamation or apply to media defendants. *Id*. at *3. The issue of whether the communication related to a good, product, or service in the marketplace was neither litigated, nor "determined" by the Texas court. *See id.* The statement in *AOL* obviously concerned a public issue or issue of public interest because it purported to expose the fact that plaintiff was

scamming his customers and the government for Medicaid payments. The statement was made to help prevent additional fraud.[2]

*Krimbill v. Talarico* concerned an email from Talarico of LCT Capital, LLC to the head of NGL Energy Partners, LLP's audit committee to alert the audit committee of a lawsuit that LCT filed against NGL. 417 P.3d 1240, 1244 (Okla. Civ. App. 2017). The communication was not simply regarding an individual's leadership issues, as Boyd represents. Rather, it concerned public filings, a judicial proceeding, and information from one party in a lawsuit to the governing body of the other party concerning the lawsuit, and advised that there may be broader issues. *Id*. The *Kimbill* Court did not analyze whether the communication was related to a good, product, or service in the marketplace. Rather, it analyzed the tension between what constitutes a matter of public concern regarding a good, product or service in the marketplace and the commercial speech exemption contained in the statute. *Id*. at 1250–51. Rather than determine either issue, the Court "presumed" that the Defendants met their initial burden that the Act applies and proceeded to analyze and decide that the district court's denial of the motion to dismiss should be upheld because the plaintiff made a prima facie showing of libel. *Id*. at 1251, 1254, 1257.

Boyd's statements in this case are unlike any of the statements at issue in the authorities he cites. Here, Boyd is neither a governmental official nor a public servant, and his statements were not made to another governmental official or public servant concerning stalking or student safety on college campuses. Although he claims his statements were made in the course of his job duties, he has not asserted that his job duties include communicating alleged criminal activities of an individual, whether someone is a thief, and whether such individual will go to

---

[2] As set forth above, these Texas cases are of no avail to Defendant. The Fifth Circuit in *Klocke* ruled that the TCPA is not applicable in federal diversity cases, and Judge Teeter in *Orchestrate* found the same for purposes of this District.

jail, and he has not asserted that the statements were in response to any particular inquiry. Although Boyd's defamatory statements contained a cursory reference to the civil suit between Jacam 2013 and GeoChem and Zaid, the statements in no way involved Boyd's right to Petition or Boyd's or any third party's safety. Boyd is not a party to the civil suit, and the statements that Zaid committed criminal offenses were not made in connection with any judicial proceeding. The statements had nothing to do with Zaid's leadership of GeoChem, the accuracy of public filings, Zaid's public statements about the company, or about any products.

As outlined above, Boyd mischaracterizes the statements at issue in Zaid's claim as related to oilfield chemicals, when in fact they are regarding Zaid's character. Boyd's statements concern Zaid's character and do not reference the products or services that Zaid's company GeoChem provides. Boyd's statements at issue in Zaid's petition are that Zaid is a common thief and will go to jail, neither of which concern Boyd's exercise of free speech under the KPSPA. (Dkt. 1-1 p. 2-5) Accordingly, Boyd fails to demonstrate his defamatory statements are free speech.

ii.     **Boyd's defamatory statements are not an exercise of his right of association.**

"'Exercise of the right of association' means a communication between individuals who join together to collectively express, promote, pursue or defend common interests." *Doe*, 61 Kan. App. 2d at 142 (quoting K.S.A. 60-5320(c)(3)). Although the definition of "exercise of the right to association" in the KPSPA does not reference a "public issue or issue of public interest," the stated purpose in the KPSPA is to safeguard the "constitutional rights of a person to petition, and speak freely and associate freely, in connection with a public issue or issue of public interest. . . ." K.S.A. § 60-5320(b). Here, Boyd's defamatory statements do not meet the definition of the

exercise of the right of association for the same reason that they do not meet the definition of the exercise of the right of free speech – that is because Boyd has not established that the statements relate to a category of "public issue or issue of public interest."

The trial court in *Doe* determined that the same communication from one university official, whose job duty included responding to requests from other university officials and keeping students safe, to another university official regarding keeping students safe, constituted both an exercise of free speech and an exercise of association. 61 Kan. App. 2d at 151. However, the Court of Appeals did not address this issue because it was not challenged on appeal. *Id.* at 153. The defendant only argued that the KPSPA did not apply because constitutional rights to free speech, petition, and association do not protect defamatory communication. The Court found it did not need to address this issue, but only needed to address whether the communication fell within the statutory definitions of the Act. *Id.* at 144–45. "The district court found that it did, and Doe does not challenge that determination." *Id.*

More importantly, this case has been thoroughly distinguished above. Boyd asserts only that his "communications regarding Zaid were with OLA customers who shared Boyd's interest in petrochemicals, as evidenced by the fact that both worked within that same industry." (Dkt. 14 p. 8). The communication in *Doe* clearly concerned the common interest between the two university officials in keeping students safe because it addressed complaints about a student of stalking and other unwanted behavior. 61 Kan. App. 2d at 131. Moreover, the statements Zaid has sued upon relate to him allegedly being a thief and engaged in criminal activity that may send him to jail. They have nothing to do with Boyd and OLA's customers' alleged shared interest in petrochemicals.

*Backes v. Misko* involved "three women who are competitors in the quarter horse breeding business, who used social media to interact with other horse enthusiasts about horse-related issues" on social media. 486 S.W.3d 7, 11 (Tex. App. 2015). In contrast, the communications Boyd made have no bearing on collectively expressing, promoting, pursuing or defending common interests. First, the communications were not collective. Boyd's defamatory statements were not in response to a request for information about Zaid and they were not to Boyd's friend; rather, they were unsolicited, false, and demeaning statements that Zaid is a thief. Second, Boyd's defamatory statements did not express, promote, or defend common interests. Boyd expressed that Zaid is a thief and will be going to jail. Boyd has not asserted that he has a common interest with his customers in Zaid's alleged criminality–or how that has any bearing on Boyd and his customers' alleged shared interest in petrochemicals. Boyd has failed to meet step one of the analysis required under the KPSPA, and his Motion to Strike should be denied.

### iii.     As characterized by Boyd himself, his defamatory statements are commercial speech specifically exempted from application of the KPSPA.

Even assuming *arguendo* that Boyd's statements concern protected speech, which they do not for all the reasons set forth above, the KPSPA would still not apply because the statements would fall under the commercial speech exemption. It is worth noting here at the outset the inconsistent positions Boyd himself takes before this Court. In an attempt to fit his communications into the listed category of a good, product, or service in the marketplace, Boyd asserts on one hand that the communications were made in the course of his job duties. On the other hand, he asserts that the statements were not made to his customers or to promote OLA's business aims in order to avoid application of the commercial speech exemption. Boyd cannot have it both ways.

K.S.A. § 60-5320(h)(2) states:

> This section does not apply to . . . a claim brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services or an insurance product, insurance services or a commercial transaction in which the intended audience is an actual or potential buyer or customer, except as provided in subsection (i).

Kansas courts have determined that the plain meaning rule is paramount in statutory interpretation. *Doe*, 61 Kan. App. 2d at 137. (citing *Nauheim v. City of* Topeka, 309 Kan. 145, 149, 432 P.3d 647 (2019). "Where there is no ambiguity, the court need not resort to statutory construction." *T & T*, 2017 WL 6546634, at *3.

Here, the plain language of the statute is clear. The KPSPA does not apply if (1) "the claim is brought against a person primarily engaged in the business of selling or leasing goods or services;" (2) "the statement or conduct arises out of the sale or lease of goods, services or an insurance product, insurance services or a commercial transaction;" and (3) "the intended audience is an actual or potential buyer or customer." K.S.A. § 60-5320(h)(2). Based on this plain language, for the commercial speech exemption to apply, the communication need not concern a good, product or service in the marketplace as Boyd argues – rather, it need only "***arise out of*** the sale or lease of a good, service, insurance product, insurance service or commercial transaction." *Id.* (emphasis added). Boyd's statements are not subject to the KPSPA *both* because they are not regarding a good, product or service in the marketplace and because they arose in the context contemplated under the commercial speech exemption.

Again, assuming *arguendo* that this Court applies the KPSPA to this diversity case and finds the statements are protected, this Court need look no further than what Boyd has admitted in his affidavit to find that the KPSPA still does not apply. Boyd is primarily engaged in the business of selling goods or services. (Dkt. 14 p. 2). Boyd worked for OLA as a Chief

Technical Officer, and his job duties included analyzing oil and gas chemicals for OLA customers. (Dkt. 14 p. 2; Dkt. 14-1 ¶ 2). Analyzing oil and gas chemicals is a service that Boyd sold to oil and gas producers. (Dkt. 14-1 ¶ 3). Boyd now works for Jacam 2013 as a "Business Development Manager." (Dkt. 14 p. 2; Dkt. 14-1 ¶ 5). Boyd's duties are to communicate with Jacam 2013 customers, identify potential customers, track and ensure sales targets are met, and work with colleagues to ensure customers' needs are met. (Dkt. 14-1 ¶ 5). Jacam 2013 is in the business of selling goods and services to customers, and Boyd's primary responsibilities include selling those goods and services. Boyd was primarily engaged in the business of selling services at OLA and is primarily in the business of selling goods and services at Jacam 2013.

If the Court determines Boyd's statements were protected free speech, then they arose out of a commercial transaction. Boyd himself claims that all of his statements regarding GeoChem were in the course of his job for OLA and intended to benefit OLA's customers. (Dkt. 14 p. 2; Dkt. 14-1 ¶ 8). Granted, the statements Zaid ultimately complains of are not about GeoChem at all, but are about alleged criminal conduct of Zaid, a fact that Boyd fails to address. Even so, although the statements at issue in the Petition were not in fact regarding GeoChem as Boyd swears in his Affidavit, they were still made in the course of Boyd's employment involving commercial transactions—both for OLA and Jacam 2013. Boyd makes this claim himself, when he argues that his statements were "made in the course of Boyd's employment." (Dkt. 14 p. 13).

The intended audience of Boyd's defamatory statements were actual or potential buyers or customers. By his account, his statements were made to OLA customers in connection with his work on behalf of OLA. (Dkt. 14 p. 2; Dkt. 14-1 ¶ 8). Additionally, Boyd made defamatory statements to actual customers while he was working at OLA, such as Crestone Peak Resources, LLC, and while he has since been employed at Jacam 2013, such as Kaiser-Francis Oil

Company, to name a few. (Dkt. 1-1 p. 3 ¶ 17, Zaid's Affidavit attached as Exhibit 1, ¶¶ 17-18). Each of these companies are actual customers of OLA, Jacam 2013, or both. (Zaid's Affidavit, ¶ 19). All of Boyd's defamatory statements were made to intended customers in the commercial transactions he was conducting on behalf of OLA or Jacam 2013 at the time.

Boyd attempts to distinguish his defamatory speech by saying that Boyd and Zaid (or their companies) are not competitors. That is not the relevant distinction. By the plain language of the statute, the requirement for the commercial speech exemption to apply is that a person who is primarily in the business of selling or leasing goods or services makes the statement in connection with a commercial transaction, and the statement is made to an actual or potential buyer or customer. All of these elements are present.

Likewise, the distinction that the statements were made to OLA's customers and not Boyd's customers directly is also irrelevant. The requirement for the commercial speech exemption to apply is not that the statement is made to actual or potential customers *of Defendant* as Boyd improperly argues. By doing so, Boyd would literally have this Court read into the statute words, language, and requirements notably absent. In addition, Boyd has repeatedly conflated Zaid and GeoChem, but here wants to make a distinction between himself and the companies he works for. Regardless, the statutory requirement is that the intended audience "is an actual or potential buyer or customer." The statute does not refer to who or what the customer belongs to, which the Legislature could have easily done by adding two words to the statute–only that the person who made it is in the business of selling or leasing goods or services and the statement is made to the actual or potential buyer or lessee of those goods or services. Therefore, if Boyd's own claims about what his statements were, and how and to

whom they were made are believed, then the statements are commercial speech not subject to the KPSPA.

**D.    Zaid Will Likely Prevail on His Claim Because There Is Substantial Competent Evidence to Support a Prima Facie Case.**

The KPSPA, if applicable in federal diversity actions, and if Defendant makes a prima facie showing that the speech is protected by the statute, shifts the burden to the Plaintiff to show a likelihood of prevailing on the claim by presenting substantial competent evidence to support a prima facie case. K.S.A. § 60-5320(d).  This does not mean that the plaintiff must prove every element of its claim before having the benefit of discovery.  To require the plaintiff to prove its case at this stage would abrogate the constitutional right to a jury trial, as well as directly conflict with federal procedural rules.

"The elements of a defamation claim in Kansas include: (1) false and defamatory words (2) communicated to a third person (3) which result in harm to the reputation of the person defamed.  Further, our state requires a plaintiff in a defamation action to allege and prove actual damages; they can no longer rely on the theory of presumed damage." *Doe*, 61 Kan. App. 2d at 149 (internal citations omitted).  "A statement is defamatory per se if it imputes (1) a crime, (2) a loathsome disease, (3) a person's unfitness for his trade or profession or (4) a woman's lack of chastity." *Folkers v. Am. Massage Therapy Ass'n, Inc.*, No. CIV.A. 03-2399-KHV, 2004 WL 3061913, at *5 (D. Kan. Feb. 10, 2004) (citing *Gomez v. Hug,* 7 Kan.App.2d 605, 612, 645 P.2d 916, 923 (1982)).

Zaid has presented evidence that Boyd stated that Zaid stole all of Jacam 2013's formulas, that Zaid is a common thief, and that Zaid will be going to jail. (Dkt. 1-1 p. 3 ¶ 15; Zaid's Affidavit, ¶ 16).  Boyd's statements to third parties that Zaid is a criminal and has

engaged in criminal activity are patently false, defamatory, and extremely harmful to Zaid's reputation. (Dkt. 1-1 p. 3 ¶ 19, Zaid's Affidavit, ¶¶ 20-23). Zaid has two doctorate degrees – one in chemistry and one in business. (Dkt. 1-1 p. 1 ¶ 5, Zaid's Affidavit, ¶ 2). Zaid has been a professional chemist for approximately 50 years and has been in the oil and gas chemistry industry for approximately 40 years. (Dkt. 1-1 p. 1-2 ¶ 6, Zaid's Affidavit, ¶¶ 1, 3). Zaid holds several patents, including in the oil and gas industry. (Dkt. 1-1 p. 2 ¶ 8, Zaid's Affidavit, ¶ 4). Zaid created or modified most of Jacam 2013's chemical formulas. (Zaid's Affidavit, ¶ 13). Zaid has extensive knowledge of chemicals in the oil and gas industry and the knowledge necessary to create chemical formulas for the oil and gas industry. (Zaid's Affidavit, ¶ 13). At all relevant times, formula claims that Jacam 2013 has filed against Zaid and GeoChem are ***civil*** matters and never a criminal matter. (Dkt. 1-1 p. 3 ¶ 18, Zaid's Affidavit, ¶ 20).

Zaid presents substantial competent evidence sufficient for a reasonable person to conclude that Boyd's statements regarding Zaid are false. Zaid had the knowledge and ability to create formulas, not engage in theft. Moreover, Zaid is not involved in any criminal matter; thus, allegations of theft, that Zaid is a common thief, and that Zaid is going to jail are all false. Statements imputing a crime are defamatory per se. Accordingly, the statements themselves are sufficient competent evidence to establish that the words were defamatory. Zaid has provided substantial competent evidence of the first element for defamation.

Zaid has also presented substantial competent evidence that the false and defamatory words were communicated to a third person, thus meeting the second element for defamation. Boyd made these statements to individuals at entities such as Crestone Peak Resources, LLC and Kaiser-Francis Oil Company. (Dkt. 1-1 p. 3 ¶ 17, Zaid's Affidavit, ¶¶ 17-18). The statements were made to representatives of numerous oil and gas producers with headquarters and

operations around the United States, including, without limitation, Colorado, Kansas, North Dakota, Oklahoma, and Texas. (Dkt. 1-1 p. 2 ¶ 14, Zaid's Affidavit, ¶ 15).

For the third element, Zaid has provided substantial competent evidence that the false and defamatory words resulted in harm to his reputation. Zaid has presented evidence that he is the Chief Executive Officer of GeoChem. (Dkt. 1-1 p. 2 ¶ 10, Zaid's Affidavit, ¶ 8). Boyd has made defamatory statements while employed by OLA and by Jacam 2013. (Dkt. 1-1 p. 3 ¶ 16, Zaid's Affidavit, ¶¶ 17-18). Boyd made the statements to numerous oil and gas producers with headquarters and operations around the United States (Dkt. 1-1 p. 2 ¶ 14, Zaid's Affidavit, ¶ 15). Boyd's statements included that Zaid stole all of Jacam 2013's formulas, that Zaid is a common thief, and that Zaid will be going to jail after Jacam 2013's civil case against Zaid and GeoChem. (Dkt. 1-1 p. 3 ¶ 15, Zaid's Affidavit, ¶ 16). Boyd's statements have exposed Zaid to public contempt and ridicule. (Dkt. 1-1 p. 3 ¶ 21, Zaid's Affidavit, ¶ 22). Zaid's personal and business reputations have been and continue to be harmed by Boyd's statements, as they have deprived Zaid of the benefits of social acceptance and public confidence. (Dkt. 1-1 p. 3 ¶ 23, Zaid's Affidavit, ¶ 23). This evidence is not merely conclusory allegations without supporting factual averments. Rather, Zaid has provided substantial and specific evidence of facts that are sufficient to demonstrate that his reputation has been harmed, and that the harm is identifiable.

Zaid has provided substantial competent evidence of each element of his case, and has therefore supported a prima facie case against Boyd for defamation. Accordingly, even if the KPSPA applies in federal diversity cases, and even if the Court finds the statements fall under the KPSPA and are not commercially exempted speech, Zaid has made a prima facie showing, and Boyd's Motion to Strike should be denied.

**E.    Boyd's Defamatory Statements Are Not Privileged.**

To begin, it is hard to discern exactly how Boyd is even asserting that qualified privilege applies. Boyd asserts that the statements he made about Zaid occurred during "the course of Boyd's employment," and are thus privileged. This is the only argument Boyd advanced as to why his statements are a qualified privilege. However, Boyd cites two cases that are entirely inapplicable to the facts of this case.

Boyd cites a 1924 opinion to support a theory that employers, and those acting as agents of an employer, possess a qualified privilege "to communicate information regarding the discharge of a former employee to its customers." *See High v. A.J. Harwi Hardware Co.*, 223 P. 264, 269 (Kan. 1924). Likewise, *Turner v. Haliburton* related to statements made by a former employer regarding a former employee in the context of a later employer attempting to verify Turner's prior employment with Haliburton. *See Turner v. Haliburton*, 240 Kan. 1, 6 (1996). Simply put, neither case has anything to do with what occurred in this action. There is no qualified privilege under Kansas law for an individual such as Boyd to make defamatory statements calling Zaid a common thief or make statements that Zaid will be going to jail. Boyd's argument that his statements enjoy a qualified privilege is without support and unavailing.

### F. Zaid has Pled Sufficient Factual Allegations to State a Claim for Defamation.

Under Fed. R. Civ. P. 12(b)(6), a claim may not be dismissed "unless it appears beyond doubt that the plaintiffs can prove no set of facts which would entitle him to relief." *Crow v. United States*, 634 F. Supp. 1085, 1090–91 (D. Kan. 1986) (*citing Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). In considering a motion to dismiss, the factual allegations of the complaint must be accepted as true and all reasonable inferences must be made in favor of the plaintiff.

*Jordan-Arapahoe, LLP v. Bd. of Cty. Comm'rs of Cty. of Arapahoe, Colo.*, 633 F.3d 1022, 1025 (10th Cir. 2011). Motions to dismiss for failure to state a claim are generally viewed with disfavor and rarely granted. *Wrenn v. State of Kan.*, 561 F. Supp. 1216, 1220 (D. Kan. 1983). Rule 12(b)(6) motions may be granted only in the clearest of cases and must be denied when additional facts obviously are required before an ultimate judgment may be formed. *Id.* "The question that must be resolved is whether, in the light most favorable to plaintiff, and with every doubt resolved in his behalf, the amended complaint states any valid claim for relief." *Id.* at 1220–21.

The elements of defamation and support for each of those elements is outlined above. Having already established substantial competent evidence to support a prima facie case, Zaid has necessarily exceeded the lower burden necessary to survive a motion to dismiss. Under the standard necessary for evaluating motions to dismiss, Zaid's petition, taking the allegations in the light most favorable to Zaid, and with all reasonable inferences made in Zaid's favor, contains enough facts to state a claim for defamation that is plausible on its face.

Boyd's only argument for dismissing the claim is that Zaid failed to allege damages with the necessary specificity. "The Tenth Circuit has held that in the context of a defamation claim Rule 8(a) 'requires that the complaint provide sufficient notice of the communications complained of to allow [the defendant] to defend itself.'" *Sanders v. Ally Fin. Inc.*, No. 20-1305-JWL, 2021 WL 2550166, at *4 (D. Kan. June 22, 2021) (quoting *McGeorge v. Cont'l Airlines, Inc.*, 871 F.2d 952, 955 (10th Cir. 1989)). This court has held that specific damages in defamation cases must be specifically stated under Fed. R. Civ. P. 9(g). *Energy Consumption Auditing Servs., LLC v. Brightergy, LLC*, 49 F. Supp. 3d 890, 905 (D. Kan. 2014).

> Our Court has described this rule as a relatively liberal standard which may be satisfied if a complaint's allegations are definite enough to enable the opposing party to prepare his or her responsive pleading and a defense to the claim. This rule does not require that the exact dollar amount of special damages be specifically pleaded. Instead, the issue is whether the pleadings contain such information as will apprise the defendant of such damages as must of necessity flow from that which is alleged.

*Id*. (internal citations omitted). Allegations in the petition sufficient to support a reasonable inference that the plaintiff suffered damage to reputation satisfy the requirements of Rule 9(g). *Folkers v. Am. Massage Therapy Ass'n, Inc.*, No. CIV.A. 03-2399-KHV, 2004 WL 306913, at *6 (holding that "although petition did not in so many words allege specific damages, [it was] reasonable to infer from publication that plaintiff suffered damage in profession and sufficiently alleged damage" when the allegations were that "defendants have publicly defamed the plaintiff and his business reputation" and that "defendants by their own admission knew that this web site would be viewed by an extraordinary number of people").

Here, the allegations in Zaid's petition, in the light most favorable to Zaid, allege more than conclusory allegations and are sufficient to support a reasonable inference that Zaid suffered damage to his reputation. Zaid alleged that he has been in the oil and gas industry for approximately 40 years (Dkt. 1-1 p. 2 ¶ 7); that Boyd made false and defamatory statements to representatives of numerous oil and gas producers with headquarters and operations around the United States (Dkt. 1-1 p. 2 ¶ 14); that Boyd's statements included that Zaid stole all of Jacam 2013's formulas, that Zaid is a common thief, and that Zaid will be going to jail after Jacam 2013's civil case against Zaid and GeoChem (Dkt. 1-1 p. 3 ¶ 15); and that Boyd's representations to third parties that Zaid is a criminal and has engaged in criminal activity are patently false, defamatory, and extremely harmful to Zaid's reputation (Dkt. 1-1 p. 3 ¶ 19). Zaid further alleged that Boyd's statements have exposed Zaid to public contempt and ridicule (Dkt. 1-1 p. 3 ¶ 21);

that Zaid's personal and business reputations have been and continue to be harmed by Boyd's statements, as they have deprived Zaid of the benefits of social acceptance and public confidence (Dkt. 1-1 p. 3 ¶ 23). These allegations are more than sufficient to support a reasonable inference that Zaid's reputation has been damaged. Zaid has alleged specific ways in which his reputation has been damaged. It is reasonable to infer that false statements made to Zaid's business associates that Zaid is a thief would cause damage to Zaid's reputation in business and the community. Zaid is not required to plead the exact dollar amount of damages to survive a motion to dismiss. These allegations sufficiently allege special damages as required by Fed. R. Civ. P. 8(a) and 9(g), and Boyd's Motion to Dismiss should be denied.

## G.  Request for Costs, Fees, and Sanctions Should Be Denied.

Defendant requests costs, fees, and sanctions per K.S.A. § 60-5320(g). This request should be denied because the KPSPA does not apply to this diversity action. However, to the extent this Court does find it applicable, Defendant's request should still be denied. This good faith dispute regarding applicable law must not be converted to a claim over costs, fees, and sanctions because of a state procedural statute with questionable application. Zaid's claim is based upon statements calling him a thief and stating he will go to jail. Zaid did not file this suit to chill free speech, his claim is brought in good faith. Moreover, even the statute states "as the court determines necessary," indicating discretion of the Court. Plaintiff would also note that the same statute provides that "[i]f the court finds that the motion to strike is frivolous or solely intended to cause delay, the court shall award to the responding party reasonable attorney fees and costs related to the motion." Thus, while Plaintiff does not believe costs, fees, or sanctions as requested by Defendant are warranted or allowed here, to the extent this Court rules

otherwise, this Court should rely on its discretion to deny the same, and take note of costs and fees being allowed against Boyd.

## III. DISCOVERY

K.S.A. § 60-5320(e)(1) provides that on a motion by a party or on the court's own motion and a showing of good cause, the court may allow specified and limited discovery relevant to the motion. Should the Court determine that the state procedural rules of KPSPA are applicable in this federal diversity action, then Zaid moves for allowance of limited discovery. The KPSPA significantly heightens the burden typically required of a Plaintiff at the pleading stage by requiring substantial competent evidence prior to affording the benefit of discovery (yet another reason why this procedure should not be allowed to conflict with federal procedure). Zaid should be afforded limited discovery to meet the heightened burden. Zaid has provided his own affidavit to support his claims, but given that Boyd's statements have damaged Zaid's reputation – *i.e.*, that Boyd's statements have caused the people to whom he made the statements to have lower or negative opinions of Zaid – those individuals are not likely to voluntarily help Zaid in supporting his claim. Should this Court determine that Zaid's affidavit is insufficient to establish substantial competent evidence, then Zaid should be permitted to conduct limited discovery to obtain the evidence necessary to meet the heightened burden of showing substantial competent evidence.

## IV. CONCLUSION

For all the reasons stated herein, Plaintiff requests that Defendant's Motion be denied.

Respectfully Submitted,

HINKLE LAW FIRM LLC
1617 North Waterfront Parkway, Suite 400
Wichita, Kansas 67206
Telephone:    316-267-2000
Facsimile:    316-630-8466
E-mail:       swalsh@hinklaw.com
E-mail:       mholcomb@hinklaw.com
E-mail:       sschillings@hinklaw.com


By /s/ Sean D. Walsh
Sean D. Walsh, SC No. 25052
Matthew K. Holcomb, SC No. 23140
Scott R. Schillings, SC No. 16150
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of May, 2022, I electronically filed the foregoing PLAINTIFF'S RESPONSE TO DEFENDANT'S ANTI-SLAPP MOTION TO STRIKE AND/OR MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Ryan M. Peck, Bar No. 21223
Morris, Laing, Evans, Brock & Kennedy, Chartered
300 North Mead, Suite 200
Wichita, Kansas 67202
Telephone: 316-262-2671
Facsimile: 316-262-6226
E-mail:  rpeck@morrislaing.com
*Attorneys for Defendant*

Janet A. Hendrick
Phillips Murrah PC
3710 Rawlins Street, Suite 900
Dallas, Texas 75219
Telephone: 469-485-7334
Facsimile: 214-434-1370
E-mail: jahendrick@phillipsmurrah.com
*Pro Hac Vice Attorney for Defendant*

/s/ Sean D. Walsh

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GENE H. ZAID,
     *Plaintiff,*

vs.

JASON R. BOYD
     *Defendant.*

C.A. NO. 6:22-cv-01089-EFM-GEB

## <u>AFFIDAVIT</u>

STATE OF KANSAS    )
                      ) SS:
COUNTY OF RENO    )

     GENE H. ZAID, of lawful age, being first duly sworn, on oath deposes and states as follows:

1.     I have been a professional chemist for approximately 50 years.

2.     I have two doctorate degrees, one in chemistry and one in business.

3.     I have been in the oil and gas chemistry industry for approximately 40 years – except for two years where I left the industry to comply with a non-compete and non-solicitation agreement.

4.     I hold approximately 70 United States and international patents across multiple industrial sectors, including various patents in the oil and gas industry and patents for a novel drug product currently in clinical trials for cancer treatment in the United States.  Additionally, I have numerous other patent applications pending in the US and around the globe.

5.     I founded JACAM Chemical Company by starting the business out of my family garage.  I developed new chemistries and built the business into one of the most respected manufacturing and chemical services companies in the Oil and Gas industry.

**EXHIBIT**

1

Response to Defendant's Anti-Slapp Motion

6.     I am the founder and Chief Executive Officer of Genzada Pharmaceuticals USA, Inc. in Hutchinson, Kansas ("Genzada"). Genzada performs cancer research and develops novel cancer treatments derived from natural compounds.

7.     I am the founder and lead chemist of Hyatt Life Sciences, Inc. in Sterling, Kansas ("Hyatt"). Hyatt researches, tests, and evaluates unique botanical entities and combinations; and provides specialized, science-based products that promote and support health and life.

8.     I am the Chief Executive Officer of GeoChemicals, LLC ("GeoChem"), and have been since 2019.

9.     GeoChem is a full-service chemical company dedicated to the treatment and enhancement of oil and gas production with expertise in the areas of production and stimulation chemistries. GeoChem sells petrochemicals to oil and gas companies and services oil and gas companies by administering the petrochemicals at production sites.

10.     Jason R. Boyd ("Boyd") worked for Oilfield Labs of America, LLC ("OLA") for approximately two and a half years initially holding the title Vice President of Technical Services and then the title Chief Technical Officer.

11.     Boyd's employment with OLA terminated in November 2021 and he went to work for Jacam Chemical Company 2013, LLC and/or its affiliates (collectively "Jacam 2013").

12.     Jacam 2013 is a petrochemical company that sells petrochemicals to oil and gas companies and services oil and gas companies by administering the petrochemicals at production sites. Jacam 2013 is one of GeoChem's competitors.

13.     I was previously employed by Jacam 2013. I created most of Jacam 2013's chemical formulas, and have extensive knowledge of chemicals in the oil and gas industry. I have the knowledge necessary to create chemical formulas for the oil and gas industry.

14. Boyd's duties at OLA included consulting with various oil and gas producers to perform allegedly independent, third-party testing of various chemical vendors' products and their efficacy against such issues as paraffin, corrosion, and scaling issues.

15. Boyd made false and defamatory statements about me to representatives of numerous oil and gas producers with headquarters and operations around the United States, including, without limitation, in Colorado, Kansas, North Dakota, Oklahoma, and Texas.

16. Boyd's statements included that I stole all of Jacam 2013's formulas, that I am a common thief, and that I will be going to jail after Jacam 2013's civil case against me and GeoChem.

17. Boyd made these statements to Crestone Peak Resources, LLC and others while employed by OLA.

18. Boyd made these statements to Kaiser-Francis Oil Company while employed by Jacam 2013.

19. Crestone Peak Resources, LLC is an OLA customer. Kaiser Francis Oil Company is/was a Jacam 2013 customer.

20. At all relevant times, formula claims that Jacam 2013 has filed against me and GeoChem are civil matters and never a criminal matter.

21. Boyd's representations to third parties that I am a criminal and have engaged in criminal activity are patently false, defamatory, and extremely harmful to my reputation.

22. Boyd's statements have exposed me to public contempt and ridicule.

23. My personal and business reputations have been and continue to be harmed by Boyd's statements, as they have deprived me of the benefits of social acceptance and public confidence.

FURTHER AFFIANT SAITH NAUGHT.

_____
GENE H. ZAID

SUBSCRIBED AND SWORN to before me, a Notary Public, this 24 day of May, 2022.

_____
Notary Public

My Appointment Expires:

_10.28.22_____

NOTARY PUBLIC - State of Kansas
SHANNIN DAWN RETTIG
My Appt Expires 10.28.22