## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

GENE H. ZAID,

        *Plaintiff,*

vs.

        Case No. 22-1089-EFM

JASON R. BOYD,

        *Defendant.*

## MEMORANDUM AND ORDER

Before the Court are two motions. Defendant Jason R. Boyd's moves to strike under the Kansas Public Speech Protection Act ("KPSPA"). In the alternative, he moves to dismiss Plaintiff Gene H. Zaid's claim for defamation based on statements made by Boyd to others concerning certain formulas in the oil and gas industry under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Court grant Boyd's Motion to Strike under the KPSPA and denies Boyd's Motion to Dismiss as moot.

### I.      Factual and Procedural Background[1]

---

[1] Generally, in ruling on a motion to dismiss, the court assumes as true all the facts alleged in the plaintiff's complaint and relies on these facts. However, because the Court is ruling on Boyd's Motion to Strike with its own standards under the KPSPA, the Court will consider both Zayd's allegations and affidavits submitted by the parties. *See* K.S.A. § 60-5320(b).

This is a defamation case. Zaid, a Kansas resident, is a well-established member of the oil and gas industry, having worked in that field for roughly 40 years.  He currently serves as the Chief Executive Officer of GeoChemicals, LLC and has done so since 2019.

Boyd resides in Colorado and is a comparatively recent addition to the oil and gas industry. In 2019, he held various positions within Oilfield Labs of America, Inc. ("OLA"), rising to the level of Chief Technical Officer.  In these positions, Boyd would consult clients by providing independent data analysis and lab services.  In November 2021, Boyd began working at Jacam Chemicals 2013, LLC ("Jacam").

In his Complaint and affidavit, Zaid alleges that while employed at OLA, Boyd made statements to various clients of OLA that Zaid stole Jacam's formulas, was a common thief, and would go to jail after Jacam's civil case against GeoChemicals, LLC.  Zaid also attests in his affidavit that Boyd's statements were false, defamatory, and extremely harmful to his reputation. Zaid's sole statements in support of the alleged reputational damage are that he has been exposed to public ridicule and contempt as well as deprived of social acceptance and public confidence.

Zaid initially brought this case in Kansas state court, after which Boyd removed the case under 28 U.S.C. § 1332 to federal court based on the parties' diversity.  Soon after removing to federal court, Boyd moved to strike Zaid's claim under the KPSPA, filing an affidavit in support of his motion.  Alternatively, Boyd moved to dismiss Zaid's defamation claim under Rule 12(b)(6) for failure to state a claim.  In response, Zaid also filed an affidavit largely repeating the allegations in his Complaint.

## II.     Legal Standards

### A.     The KPSPA.

The purpose of the Kansas Public Speech Protection Act ("KPSPA") is to prevent defamation lawsuits intended to harass individuals speaking about "a public issue or issue of public interest."[2]  As such, it falls under the category of "anti-SLAPP" (Strategic Lawsuits Against Public Participation) statutes enacted by most states. Under the KPSPA, a defendant may move to strike a claim if it is "based on, relates to or is in response to a party's exercise of the right of free speech, right to petition or right of association."[3]  This motion to strike may occur any time within "60 days of the service of the most recent complaint."[4]

The KPSPA provides that:

> A party bringing the motion to strike has the initial burden of making a prima facie case showing the claim against which the motion is based concerns a party's exercise of the right of free speech, right to petition or right of association.  If the moving party meets the burden, the burden shifts to the responding party to establish a likelihood of prevailing on the claim by presenting substantial competent evidence to support a prima facie case.  If the responding party meets the burden, the court shall deny the motion.[5]

**B.      Fed. R. Civ. Pro. 12(b)(6).**

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[6]  Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' "[7]  A claim is facially plausible if the plaintiff pleads facts sufficient for the court to

---

[2] K.S.A. § 60-5320(b).

[3] *Id.* § 60-5320(d).

[4] *Id.*

[5] *Id.*

[6] Fed. R. Civ. P. 12(b)(6).

[7] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

reasonably infer that the defendant is liable for the alleged misconduct.[8]  The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[9]  When, however, a party pleads special damages, the party must state those damages with specificity under Rule 9(g).[10]

Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[11]  Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[12]  If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.' "[13]

### III.    Analysis

**A.    The KPSPA applies to federal courts sitting in diversity.**

       *1.    Procedural versus substantive law as applied in federal courts under* Erie

First, the Court must determine whether the KPSPA applies to federal courts sitting in diversity.  In his Motion, Boyd relies heavily upon the sole precedent within the District of Kansas to argue that the KPSPA does apply as it occupies a different sphere than federal procedural law. In response, Zaid argues from cases either from other jurisdictions or analyzing different statutes

---

[8] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[9] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[10] Fed. R. Civ. P. 9(g).

[11] *Iqbal*, 556 U.S. at 678–79.

[12] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

[13] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

that the KPSPA is procedural and conflicts directly with the Federal Rules of Civil Procedure.  If so, then it cannot apply in federal court.

When sitting in diversity, federal courts apply state substantive law and federal procedural law under the *Erie* doctrine.[14]  The United States Supreme Court has admitted that determining whether a state law is substantive or procedural "is sometimes a challenging endeavor."[15]  In general, however, substantive law involves "rights and remedies that bear upon the outcome of the suit," whereas procedural law governs "the processes or modes for enforcing those substantive rights."[16]  The primary consideration "is whether . . . the outcome would be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in state court."[17]  If the state law provides both procedural and substantive law, then courts have a two part inquiry.[18]  First, the court must determine whether a Federal Rule of Civil Procedure "answer[s] the same question" raised by the state law.[19]  If so, then the court must determine whether the rule violates the Rules Enabling Act.[20]  To date, not a single Federal Rule of Civil Procedure has been held to violate the Act.  Should the court find the Rule to be valid, then the court must apply the rule.

2.      *The* Caranchini *decision and an overview of the current circuit split*

Although Zaid argues from non-binding caselaw as if this were a matter of first impression for the District of Kansas, the fact remains that it is not.  Four years ago in a published decision, a

---

[14] *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1216–17 (10th Cir. 2011).

[15] *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996).

[16] *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, 885 F.3d 659, 668 (10th Cir. 2018) (citing *Sibbach v. Wilson & Co.*, 312 U.S. 1, 14 (1941)).

[17] *Los Lobos*, 885 F.3d at 668 (further citations and quotations omitted).

[18] *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398–99 (2010).

[19] *Id.*

[20] *Id.*

judge of this district addressed whether the KPSPA applied in federal court as substantive law.[21] Ultimately, he held that it did.[22]

The *Caranchini* court began by acknowledging *Los Lobos*, a case in which the Tenth Circuit held that the New Mexico's "anti-SLAPP" statute was purely procedural and did not apply to a federal court sitting in diversity.[23] That statute, however, differed from most other similar state statutes, including the KSPSA.[24] First, it did not create "alter substantive standards" by creating a higher pleading burden for plaintiffs bringing defamation actions.[25] Second, it did not involve any burden-shifting provisions.[26] Recognizing that the *Los Lobos* decision was not binding regarding the KPSPA, the *Caranchini* court nevertheless considered the Tenth Circuit's reasoning to support applying the KPSPA in federal courts.[27]

The court then launched into a discussion of the circuit split among courts that have addressed similar anti-SLAPP statutes in other jurisdictions.[28] At that time, the First,[29] Second,[30] and Fifth[31] Circuits held that similar anti-SLAPP statutes are applicable in federal courts, whereas

---

[21] *Caranchini v. Peck*, 355 F. Supp. 3d 1052, 1057 (D. Kan. 2018).

[22] *Id.*

[23] *Los Lobos*, 885 F.3d at 673.

[24] *Id.* at 670.

[25] *Id.* ("Most importantly for our purpose, subsection A sets forth no rule(s) of substantive law. Rather, it tells the trial court to hurry up and decide dispositive pretrial motions in lawsuits that a movant claims fit the description of "baseless" provided in § 38-2-9.2, i.e., frivolous lawsuits—and that's all."); *see also* N.M. Stat. Ann. §§ 38-2-9.1, 38-2-9.2.

[26] *Los Lobos*, 885 F.3d at 670.

[27] *Caranchini*, 355 F. Supp. 3d at 1057.

[28] *Id.* at 1058.

[29] *See Godin v. Schencks*, 629 F.3d 79, 89–90 (1st Cir. 2010).

[30] *See Adelson v. Harris*, 774 F.3d 803, 809 (2nd Cir. 2014).

[31] *See Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 169 (5th Cir. 2009) (upholding the application of the Louisiana anti-SLAPP statute in federal court).

the Seventh,[32] Ninth,[33] and D.C.[34] Circuits held the opposite.  Since *Caranchino* was decided, the

Ninth Circuit has issued two opinions embracing the application of the California and Texas anti-

SLAPP statutes in federal diversity cases,[35] the Eleventh Circuit has issued an opinion deciding

against applying Georgia's anti-SLAPP statute,[36] the Second Circuit determined that the California

anti-SLAPP statute is inapplicable in federal court[37] and Fifth Circuit rejected its prior unstated

approval of anti-SLAPP statutes in federal court by holding the Texas anti-SLAPP statute

inapplicable in federal court.[38]   *Los Lobos* remains the sole Tenth Circuit opinion on any state's

anti-SLAPP statute.  Likewise, *Caranchini* remains the sole court in any jurisdiction to address

whether the KPSPA applies in federal court.

In 2019, another District of Kansas judge addressed whether the Texas anti-SLAPP statute

should apply in federal court.[39]  The court determined the statute would not apply.[40]  The court

relied heavily on the Fifth Circuit's recent decision in which it held the same.[41]  At that time, the

---

[32] *Intercon Sols., Inc. v. Basel Action Network*, 791 F.3d 729 (7th Cir. 2015) (holding that Washington anti-SLAPP statute was inapplicable in federal court, at least partially because the Washington Supreme Court had struck it down under the Washington state constitution).

[33] *Makaeff v. Trump Univ. LLC*, 715 F.3d 254, 273–74 (9th Cir. 2013); *but see Clifford v. Trump*, 818 F. App'x 746, 747 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 1374 (2021) ("

[34] *See Abbas v. Foreign Policy Gr., LLC*, 783 F.3d 1328, 1332 (D.C. Cir. 2015).

[35] *See Clifford*, 818 F. App'x at, 747 ("The district court correctly concluded under the *Erie* doctrine that the motion to dismiss procedures of the Texas Citizens Participation Act (TCPA)—Texas's version of an anti-SLAPP law—apply in federal court.  We have long held that analogous procedures in California's anti-SLAPP law apply in federal court (citation omitted), and the TCPA is indistinguishable from California's law in all material respects."); *CoreCivic, Inc. v. Candide Grp., LLC*, 2022 WL 3724307, at *6 (9th Cir. 2022).

[36] *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345 (11th Cir. 2018).

[37] *La Liberte v. Reid*, 966 F.3d 79 (2d Cir. 2020).

[38] *Klocke v. Watson*, 936 F.3d 240, 245 (5th Cir. 2019), as revised (Aug. 29, 2019).

[39] *Orchestrate HR, Inc. v. Blue Cross Blue Shield Kan.*, 2019 WL 6327591, at *3 (D. Kan. 2019).

[40] *Id.*

[41] *Id.* at *1–3.

Fifth Circuit's was "only circuit to squarely address the applicability of the TCPA [Texas anti-SLAPP statute] in federal court."[42]   Since then, the Ninth Circuit has held that the TCPA may apply in federal court, creating a direct circuit split on this issue.[43]

Although the court acknowledged the *Caranchini* decision, it held that "the Court concludes that *Caranchini* is inapposite to the question of whether the TCPA applies in federal court in diversity cases" because "importantly, *Caranchini* analyzed Kansas's anti-SLAPP law, not the TCPA."[44]   Therefore, the court considered the Fifth Circuit's opinion that the TCPA should not apply in federal court more persuasive to the case before it than the *Caranchini* court's decision that the KPSPA should apply.[45]   Therefore, just as *Caranchini* was "inapposite" to that decision, so that case is inapposite to this Court's decision regarding the KPSPA.

> 3.   *An overview of the differences in reasoning between the advocates on either side of the circuit split.*

In general, courts holding that anti-SLAPP statutes should not apply in federal court have relied on the D.C. Circuit's reasoning in *Abbas*.  That reasoning asserts that an anti-SLAPP statutes "answer the same question"[46] as Federal Rules of Procedure 12 and 56 and, therefore, are inapplicable in federal court under *Shady Grove*.[47]   These courts characterize the "question" at issue as asking what are the circumstances under which a court must dismiss a plaintiff's claim before trial.[48]   This broad interpretation requires that any extra hurdle or standard outside of Rules

---

[42] *Id.* at *3.

[43] *See Clifford*, 818 F. App'x at 747.

[44] *Id.*

[45] *Compare* Tex. Civ. Prac. & Rem. § 27.005, *with* K.S.A. § 60-5320(d).

[46] *Shady Grove*, 559 U.S. at 398–99.

[47] *Abbas*, 783 F.3d at 1135.

[48] *Abbas*, 783 F.3d at 1133.

12 or 56 that prevents a plaintiff's claim from getting to trial necessarily conflicts with the Rules and therefore fails.[49]

In contrast, courts holding that anti-SLAPP statutes do apply in federal court have held that they do not attempt to answer the same question as Rules 12 and 56 "nor do they 'address the same subject.' "[50]  These courts characterize anti-SLAPP statutes as addressing only "special procedures for state claims based on a defendant's petitioning activity" instead of "general federal procedures governing all categories of cases," as covered by Rules 12 and 56.[51]  In essence, these courts have reasoned that there is no conflict between the Rules and anti-SLAPP statutes because the latter comprise a "supplemental and substantive rule to provide added protections . . . to defendants who are named as parties because of constitutional petitioning activities."[52]  Specifically, the substantive nature of the anti-SLAPP statutes is evident when such a statute "create[s] a substantive burden shifting provision."[53]  This is because "it is long settled that the allocation of burden of proof is substantive in nature and controlled by state law."[54]

Furthermore, a broad interpretation of Rules 12 and 56 implies that Congress intended them to "occupy the field with respect to pretrial procedures aimed at weeding out meritless claims."[55]  Congress's own passing of the "Private Securities Litigation Reform Act of 1995—which created a higher standard for pleading scienter in any § 10(b) private action" indicates to the contrary.[56]

---

[49] *Id.* at 1134.

[50] *Godin*, 629 F.3d at 88 (quoting *Shady Grove*, 559 U.S. at 402).

[51] *See, e.g.*, *id.*

[52] *Id.*

[53] *Caranchini*, 355 F. Supp. 3d at 1059.

[54] *Godin*, 629 F.3d at 89 (citing *Palmer v. Hoffman*, 318 U.S. 109, 117 (1943)).

[55] *Id.* at 91.

[56] *Caranchini*, 355 F. Supp. 3d at 1059.

Finally, refusing to implement anti-SLAPP statutes in federal court would undermine one of the primary aims of *Erie*; discouraging forum shopping.[57] This is because "electing to bring state-law claims in federal as opposed to state court would allow a plaintiff to avoid [the anti-SLAPP statute's] burden-shifting framework . . . and circumvents any liability for a defendant's attorney's fees or costs."[58]

> 4.    *The Court holds that the KPSPA applies to federal courts sitting in diversity.*

As with all cases involving the intricacies of *Erie*'s murky waters, there are persuasive arguments both for and against allowing federal courts to apply anti-SLAPP statutes. The Court finds that the reasoning of the First Circuit, the Tenth Circuit in *Los Lobos*, and District of Kansas precedent persuade it to hold that the KPSPA does apply in federal court.

First, the Tenth Circuit's reasoning in *Los Lobos* for determining that the New Mexico anti-SLAPP statute was procedural follows the exact same lines by which other circuits have determined their respective anti-SLAPP statutes were substantive. Namely, the Tenth Circuit emphasized that the New Mexico statute was procedural because it did not contain any burden-shifting provisions or alter the substantive standards for determining the plaintiff's case.[59] Under the Tenth Circuit's reasoning, an anti-SLAPP statute that did either of those things would be "more substantive in nature"[60] than the New Mexico statute. Unlike the New Mexico statute, the KPSPA incorporates burden-shifting provisions. Therefore, the Tenth Circuit would likely hold that the KPSPA is, to some degree, substantive. This is consistent with the other circuits' recognition that

---

[57] *Id.*

[58] *Godin*, 629 F.3d at 91.

[59] *See Los Lobos*, 885 F.3d at 670.

[60] *See Caranchini*, 355 F. Supp. 3d at 1061; *Los Lobos*, 885 F.3d at 670.

burden-shifting provisions are necessarily substantive and, therefore, controlled by state law. Furthermore, the provisions of the KPSPA[61] are intrinsically "intertwined with, a substantive state-law right or remedy that it defines the scope of that substantive right or remedy,"[62] namely recovery under Kansas defamation law. Therefore, the Court believes that the Tenth Circuit would likely hold that the KPSPA applies in federal court.

Like the court in *Caranchino*, this Court finds that the twin aims *Erie*, the "discouragement of forum shopping and inequitable administration of the laws,"[63] are best served by applying the KPSPA in federal court. Otherwise, plaintiffs would be incentivized to file in federal court to avoid the heightened pleading requirements imposed by the KPSPA. Therefore, respecting District of Kansas precedent and being persuaded by the reasoning of courts choosing to apply similar anti-SLAPP statutes in federal court, the Court holds that the KPSPA is applicable in federal court.

Lastly, Zaid cites to two unpublished Kansas Court of Appeals decisions that describe the mechanisms within the KPSPA as "procedural."[64] However, to quote from cases dealing with circumstances wholly unrelated to *Erie* or federal courts for the proposition that the KPSPA is procedural under an *Erie* analysis is wholly misleading.[65] Therefore, those Kansas cases are inapplicable to the Court's ruling under *Erie*.

---

[61] *See generally* K.S.A. § 60-5320.

[62] *Shady Grove*, 559 U.S. at 411.

[63] *Godin*, 629 F.3d at 91.

[64] *T & T Fin. of Kansas City, LLC v. Taylor*, 408 P.3d 491 (table), 2017 WL 6546634 at *2 (Kan. Ct. App. 2017); *Kemmerly v. Wichita Eagle*, 508 P.3d 876 (table), 2022 WL 1436399, at *2 (Kan. Ct. App. 2022).

[65] *See Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 143–44 (2d Cir. 2013) ("State rules that are considered 'procedural' under state law may still apply in federal diversity suits if those rules are considered 'substantive' under federal law pursuant to Erie.").

**B.      Zaid has failed to meet his burden under the KPSPA.**

Having found that the KPSPA applies in federal court, the Court must analyze whether the parties have met their respective burdens under the KPSPA's two-part test.  First, the movant must make a prima facie case showing that the claim concerns his rights to free speech.[66]  If the movant succeeds, "the burden shifts to the responding party to establish a likelihood of prevailing on the claim by presenting substantial competent evidence to support a prima facie case."[67]  A court may consider only pleadings and affidavits in ruling on this second step.[68]

    *1.      The alleged statements involve goods, products, or services in the marketplace, thereby bringing Zaid's claim under the KPSPA's provision.*

The Court must first analyze whether Boyd has met his burden of establishing a prima facie case that the KPSPA provisions apply to the alleged statements.  Boyd asserts that the alleged statements relate to a good, product, or service in the marketplace because they refer to the Jacam 2013 formulas.  In contrast, Zaid argues that the content of the statements concerns Zaid personally and does not involve a good, product or service in the marketplace.  Lacking analogous Kansas caselaw interpreting the KPSPA, each party cites to several cases in other jurisdictions in support of their arguments.

In interpreting the KPSPA, the Court is mindful of the statutory mandate that "[t]he provisions of the [KPSPA] shall be applied and construed liberally to effectuate its general purposes."[69]  The KPSPA "explicitly states its purpose"[70] as:

---

[66] K.S.A. § 60-5320(d).

[67] *Id.*

[68] *Id.*

[69] *Id.* § 60-5320(k).

[70] *T & T*, 2017 WL 6546634 at *3.

> [T]o encourage and safeguard the constitutional rights of a person to petition, and speak freely and associate freely, in connection with a public issue or issue of public interest to the maximum extent permitted by law while, at the same time, protecting the rights of a person to file meritorious lawsuits for demonstrable injury.[71]

The KPSPA covers three categories of speech within its protections, "the right of free speech, right to petition or right of association."[72]  These categories, however, only apply in relatively limited circumstances.[73]  The first, right to free speech, only covers "a communication made in connection with a public issue or issue of public interest."[74]  The KPSPA defines "[p]ublic issue or issue of public interest" as "related to: (A) [h]ealth or safety; (B) environmental, economic or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product or service in the marketplace."[75]  The parties agree that whether the KPSPA applies to Zaid's claim turns in large part upon whether Boyd's statements were made in connection with "a good, product or service in the marketplace."[76]

First, Boyd bears the burden of proving that Zaid's claim concerns the exercise of Boyd's protected right to free speech. Kansas courts construing the KPSPA have held that this determination is based solely on the contents of the plaintiff's claims."[77]  Therefore, facts, admittances, or denials stated elsewhere are irrelevant.[78]

---

[71] K.S.A. § 60-5320(d).

[72] *Id.* § 60-5320(d).

[73] *See id.* § 60-5320(c) (defining terms under the KPSPA).

[74] *Id.* § 60-5320(c)(4).

[75] *Id.* § 60-5320(c)(7).

[76] *Id.* § 60-5320(c)(7)(E).

[77] *T & T*, 2017 WL 6546634, at *5.

[78] *Id.*

The one Kansas case addressing K.S.A. § 60-5320(c)(7)(E) is *T & T Fin. of Kansas City, LLC v. Taylor*.[79]   Interpreting the KPSPA, the Kansas Court of Appeals ruled on whether a defendant's statements about the plaintiff related to a good, product, or service in the marketplace.[80]   Specifically, the defendant alleged that the plaintiff, the owner of a "coffee consulting company" was "an abuser of women and children, a narcissistic sociopath, and a sex porn addict."[81]   These statements were in no way connected to the plaintiff's business. Furthermore, the court noted that the plaintiff "does not sell coffee to the public."[82]   Based on these facts, the court, remanding the case to the district court, "question[ed] whether the allegations . . . even if true, are in any way related to a good, product or service in the marketplace."[83]

Applying the reasoning of *T & T* to the facts at hand demonstrates that although the alleged statements concerned Zaid as an individual, they also involved a product in the marketplace, namely Jacam's formula.  Indeed, the complaint reads, "Boyd's statements included that Zaid stole all of Jacam's formulas; that Zaid is a common thief; and that Zaid will be going to jail after Jacam's civil case against Zaid and GeoChem."  On the face of the complaint, the statements about the Jacam formulas necessarily involve a good or product in the marketplace.  Out of context, the other alleged statements may refer to Zaid as an individual.  However, the burnt of these statements concerned the alleged theft of Jacam's formulas.  Furthermore, in contrast to the plaintiff in *T &*

---

[79] *Id.*

[80] *Id.*

[81] *Id.*

[82] *Id.*

[83] *Id.*

*T*, Zaid is not a consultant but rather a participant in the oil and gas marketplace. Therefore, examining the content of the statements in Zaid's complaint reveals that the statements refer to a good or product in the marketplace. Accordingly, Zaid's claim falls under the KPSPA's protections.

Ironically, Zaid takes the time to point out that the Texas anti-SLAPP statute was amended in 2019 to exclude from the definition of "a matter of public interest" the reference to "a good, product, or service in the marketplace." This was because the inclusion of that phrase within the statute necessarily allowed a broad swath of motions to strike under the anti-SLAPP statute into Texas courts.[84] Defendant even contends that reading the KPSPA literally "would encompass nearly every conceivable communication." This is, of course, an over exaggeration, as demonstrated by the Kansas Court of Appeals opinion in *T & T* and this Court's recent decision in *Smith v. Williams*. However, Zaid is correct so far as he implies that the KPSPA's provisions are very broad indeed. Nevertheless, it is not the Court's role to make a policy determination on whether the statute should include such a broadly applicable phrase; that is the role of the Kansas Legislature. Instead, the Court must honor the Legislature's decision to include that broad statement and, furthermore, must construe that provision liberally to effectuate the purpose of the KPSPA. This necessitates finding that the statements alleged in Zaid's Complaint fall under the KPSPA's protected speech provisions. Accordingly, Boyd has met his prima facie case in showing that the provisions of the KPSPA apply to Zaid's defamation claim.

      2.       *The alleged statements do not fall under the category of commercial speech.*

---

[84] *See* Matthew D. Bunker & Emily Erickson, *The Jurisprudence of Public Concern in Anti-SLAPP Law: Shifting Boundaries in State Statutory Protection of Free Expression*, 44 Hastings Comm. & Ent L.J. 133, 153 (2022).

Even if statements might otherwise fall under the KPSPA's protections, the KPSPA categorically exclude commercial speech.[85]  This exception states that the KPSPA does not apply to:

> [A] claim brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct *arises out of* the sale or lease of goods, services or an insurance product, insurance services or a commercial transaction in which the intended audience is an actual or potential buyer or customer.[86]

No Kansas court has yet interpreted this provision.  Other courts interpreting similar provisions have consistently held that commercial speech protection provisions should be interpreted far more narrowly than the "goods, products or services in the marketplace" standard for determining whether free speech rights are involved in the first place.[87]  Likewise, it is clear that the plain language of the commercial speech exception is far narrower than K.S.A. § 60-5320(c)(7)(E).  Zaid flips this distinction on its head, arguing that it is in fact the "goods, products or services" provision that should be read narrowly and the commercial speech provision which deserves a broad interpretation.  As Boyd points out, this would completely erase any meaning

---

[85] K.S.A. § 60-5320(h)(2).

[86] *Id.* (emphasis added).

[87] *See, e.g., ADB Int., LLC v. Wallace*, 606 S.W.3d 413, 430 (Tex. App. 2020), *rev. denied* (Sept. 2, 2022) ("This distinction between comments about goods and services available in the marketplace and those sold by the person making the statements is consistent with the Supreme Court's instruction that the TCPA's exemptions must be construed narrowly."); *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688–91 (Tex. 2018) ("Thus, the commercial-speech exemption applies only to certain communications related to a good, product, or service in the marketplace—communications made not as a protected exercise of free speech by an individual, but as commercial speech which does no more than propose a commercial transaction.") (further citations and quotations omitted); *Muddy Waters, LLC v. Superior Ct.*, 277 Cal. Rptr. 3d 204, 216 (2021), *rev. denied* (July 21, 2021) ("[T]his narrow commercial speech exemption applies to speech or conduct by a person engaged in the business of selling or leasing goods or services when ... that challenged conduct pertains to the business of the speaker or his or her competitor.").

K.S.A. § 60-5320(c)(7)(E) might possess and would be contrary to the stated purpose of the KPSPA.

Persuasive analyses from other jurisdictions help clarify the likely scope of the KPSPA's commercial speech provision. Interpreting an identical provision in the Texas anti-SLAPP statute, the Texas Supreme Court held that the provision only applies to a defendant's statements made about *their own* goods or services.[88] After all,

> [i]f the exemption applies whenever a seller of goods or services makes a statement regarding any other goods or services, the exemption would always deny the TCPA's [Texas anti-SLAPP statute] protection to any vendor or merchant, regardless of the context of the person's speech. Yet the TCPA explicitly applies to claims based on communications regarding goods or services in the marketplace, regardless of the defendant's occupation.[89]

For example, in a later Texas case interpreting that same provision, the court held that the commercial speech exception did not apply because "[defendant]'s statements about [plaintiff]'s product, the FasciaBlaster, cannot reasonably be considered statements about the services that [defendant] provides."[90] To put it another way, the defendant in making those statements was not "intending to promote her services or enhance her business."[91]

From a plain reading of the KPSPA's commercial speech exception, Boyd's alleged statements must have *arisen* from some sort of commercial transaction for the exception to apply. Admittedly, Boyd's affidavit that the statements were "intended to benefit OLA's customers" puts

---

[88] *Castleman*, 546 S.W.3d at 688–89.

[89] *Id.*

[90] *ABD Interest*, 606 S.W. at 430.

[91] *Id.*

his argument on dangerous ground. However, neither party cares to explain how these statements would do so. Indeed, the very nature of the statements, alleging criminal conduct and bragging about the consequences of a civil case, removes it from the realm of commercial speech. Even though Boyd is in the business of providing services to customers and even though these statements were made "in the course of my job for OLA," the statements did not arise from that work. They were not intended to promote Boyd's sales, nor can the Court fathom how they would endear him or OLA to his clients. Rather Boyd's statements arose from circumstances and conduct wholly unrelated to the present provision of services by OLA to its customers. Finally, and most importantly, Boyd's statements were not about his own services but about another's conduct, conduct which has no bearing on any services provided by OLA to its customers. Interpreting the commercial speech exception narrowly, in accord with the KPSPA's purpose and persuasive reasoning from other courts, Boyd's comments were not commercial speech.

By showing from the content of the Complaint that it falls under the right to free speech as defined by the KPSPA and that the commercial speech exception does not apply, Boyd has met his burden. As such, the Court need not analyze whether Zaid's complaint also implicated Boyd's right of association under the KPSPA.

3.     *Zaid has not established a likelihood of prevailing by presenting substantial evidence to support a prima facie case.*

Because Boyd has met his burden, the burden has shifted to Zaid to prove a likelihood of prevailing on his claim by substantial competent evidence. This Zaid has failed to do.

Once the movant establishes a prima facie case that the statements at issue fall under the KPSPA's protection, the burden shifts to the plaintiff to prove a likelihood of success on the merits

by "substantial competent evidence."[92]  Kansas courts have defined this substantial competent evidence as meaning "legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion."[93]  In determining whether the plaintiff has met this burden, the court may consider both pleadings and affidavits submitted by the parties.[94]  The court need not, however, accept all the plaintiff's allegations as true.[95]

The elements of defamation under Kansas law are: "[1] false and defamatory words, [2] communicated to a third person, [3] which results in harm to the reputation of the person defamed."[96]  Boyd asserts that Zaid has failed to provide substantial evidence concerning two of these elements.  First, he argues that Zaid has failed to show any evidence that the alleged statements are "false and defamatory."  Second, Boyd argues that Zaid has failed to prove special damages as required by Kansas law.  Finding that the second of these arguments is sufficient to answer whether Zaid has met his burden, the Court need not address the first.

"[I]n this state [Kansas], damage to one's reputation is the essence and gravamen of an action for defamation."[97]  Damage to one's reputation in a defamation action constitutes "special damages."[98]  A plaintiff can prove special damages by showing: "(1) persons were deterred from

---

[92] K.S.A. § 60-5320(d).

[93] *Doe v. Kansas State Univ.*, 61 Kan. App. 2d 128, 499 P.3d 1136, 1150 (2021).

[94] K.S.A. § 60-5320(d).

[95] *See Doe*, 499 P.3d at 1150 ("Requiring courts to accept the allegations in a plaintiff's petition as true would render meaningless the language in the Act which requires a court to consider opposing affidavits, as well as its requirement that the party opposing the motion must present substantial competent evidence. Such a reading would violate one of our basic canons of statutory interpretation.").

[96] *Droge v. Rempel*, 39 Kan. App. 2d 455, 180 P.3d 1094, 1097 (2008) (further quotations and citations omitted).

[97] *Gobin v. Globe Pub. Co.*, 232 Kan. 1, 649 P.2d 1239, 1243 (1982).

[98] *See, e.g., Woodmont Corp. v. Rockwood Ctr. P'ship*, 811 F. Supp. 1478, 1483 (D. Kan. 1993); see also Hall v. Kansas Farm Bureau, 274 Kan. 263, 275, 50 P.3d 495, 504 (2002) ("As the court stated in *Moran v. State*, 267

associating with it; (2) its reputation has been lowered in the community; or (3) its profession suffered."[99]  Reputational damage may "be inferred . . . so long as the inference is reasonable."[100]  In any case, "damages for defamation may not be presumed but must be established by proof of actual damages."[101]

Under Kansas law, "'[b]road and factually unsupported allegations . . . do not support a claim for damages for alleged defamation."[102]  Rather, there must be specific facts to support the inference of reputational damage, such as lost sales,[103] lost profits,[104] "a decrease after publication of defendants' statements for requests for [plaintiff]'s professional participation,"[105] or a decline in clients or revenue.[106]  These facts may be drawn from a "victim's own observations . . . but they must raise a reasonable inference that the damage was caused by the plaintiff's statements." [107]  A general allegation or sworn statement that plaintiff suffered reputational harm unsupported by specific observations will not suffice.[108]

---

Kan. 583, 598–99, 985 P.2d 127 (1999), the term 'special damages' in a defamation context means nothing more than actual damage.").

[99] *Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*, 427 F. Supp. 2d 1032, 1072 (D. Kan. 2006)

[100] *Id.* (examining "special damages" requirement in context of summary judgment motion); *see also Moran v. State*, 267 Kan. 583, 985 P.2d 127, 133 (1999) ("[Plaintiff]'s beliefs . . . do not amount to much by themselves.  In order to amount to anything, the inferences [plaintiff] would have us draw must be reasonable.").

[101] *In re Rockhill Pain Specialists, P.A.*, 55 Kan. App. 2d 161, 186, 412 P.3d 1008, 1025 (2017).

[102] *State v. Smith*, 57 Kan. App. 2d 312, 452 P.3d 382, 390 (2019) (further citations and quotations omitted).

[103] *Sunlight Saunas*, 427 F. Supp. 2d at 1072 ("An inference of damage to reputation can be inferred from lost sales, and is a question of fact for the jury.").

[104] *Energy Consumption Auditing Servs., LLC v. Brightergy, LLC*, 49 F. Supp. 3d 890, 905 (D. Kan. 2014).

[105] *Moran*, 985 P.2d at 133.

[106] *Marcus v. Swanson*, 515 P.3d 297 (table), 2022 WL 3570349, at *6 (Kan. Ct. App. 2022) (giving examples of situations where plaintiff had been able to show an inference of special damages).

[107] *Smith*, 452 F.3d at 390 (further citations and quotations omitted).

[108] *See, e.g.*, *Woodmont Corp. v. Rockwood Ctr. P'ship*, 811 F. Supp. at 1483 (D. Kan. 1993).

For example, in *Woodmont Corp.*, the plaintiff bringing a defamation case "merely made the general allegation that defendants' public statements damaged its business reputation."[109]  The plaintiff failed to "name[] any customer whose business was lost as a result of the statement, nor . . . allege[] the amount of such loss."[110]  Rather, "plaintiff . . . merely made the general allegation that defendants' public statements damaged its business reputation."[111]  Therefore, the court held that the plaintiff had not pled sufficient facts to support a reasonable inference of reputational damages.[112]

Here, Zaid's complaint is practically identical to that of the plaintiff in *Woodmont Corp.* in that Zaid fails to plead either actual damages or facts from which the Court may reasonably infer that Zaid suffered reputational damages.  His affidavit attached to his response contains no additional information or specific instances from which reputational damage may be inferred.  Zaid does not allege, much less prove, lost profits, lost business, lost clients, loss of opportunities, or any facts implying actual damages.  Rather, Zaid makes a general and factually unsupported statement that he has lost "the benefits of social acceptance and public confidence."  This is equivalent to the plaintiff's general allegation in *Woodmont Corp.* that its business reputation had been damaged.  That statement, along with Zaid's in the present case, is insufficient to apprise a defendant of what damages must necessarily flow from such alleged reputational harm.  There can be no reasonable inference of damages without some sort of alleged facts showing the effects of reputational damage.

---

[109] *Id.* at 1484 (analyzing motion to dismiss, a much lower standard than the one contained in the KPSPA).

[110] *Id.*

[111] *Id.*

[112] *Id.*

By failing to show any evidence of actual damages, Zaid has failed the higher burden of showing substantial evidence of such damages.   Therefore, Zaid cannot prove a likelihood of success on his claim.

       *4.     Boyd's claim that the statements were privileged is moot*

As an alternative argument for why Zaid's defamation claim must fail, Boyd asserts that the statements at issue were subject to qualified privilege under Kansas law.  The Court finds that the issue is moot because Zaid cannot prove a likelihood of success on his claim.  Therefore, the Court need not address this issue.

**C.    Zaid's request for discovery is denied.**

Before dismissing a defamation action under the KPSPA, the court has the option to allow a period of "specified and limited discovery."[113]  The court may institute such a period either on a party's motion or *sua sponte*.[114]  Regardless of who moves for discovery, the motion must be supported by "good cause."[115]

Here, Zaid has failed to show good cause as to why discovery should be allowed in this case.  His sole argument is that because of Boyd's statements, the individuals influenced by such statements are unlikely to provide affidavits.  Such an argument is inherently a failing one.  First, Zaid does not show that he has attempted to reach these individuals and his plea was rejected.[116]  As it is, his statement relies entirely on conjecture.  Furthermore, the deficiencies with Zaid's claim do not require other witnesses but rather more specifically pleaded facts showing actual damages.

---

[113] K.S.A. § 60-5320(e)(1).

[114] *Id.*

[115] *Id.*

[116] If he had, he would have a stronger argument for showing actual damages.

As stated above, Zaid's personal observations would have been enough if he had observed facts reasonably implying reputational damages.  If Zaid has experienced such damages, as required to recover for defamation under Kansas law, then Zaid should have been able to allege these damages with sufficient specificity to survive Boyd's Motion to Strike.  Furthermore, Zaid's affidavit attached to his response does little more than restate the allegations in his complaint.  Zaid does not attempt to expand upon his general allegations of reputational harm.

Without Zaid showing good cause, the Court cannot grant such discovery.  To the extent that the KPSPA allows the Court to come up with good cause on its own initiative and grant a period of discovery, the Court declines to do so for the reasons stated above.

To reiterate, the Court grants Boyd's Motion to Strike.  However, the Court does not dismiss the case at this time, but rather grants Zaid the opportunity to amend his Complaint to allege damages with the requisite specificity.  Zaid is granted until October 14, 2022, to submit an amended Complaint.  Failure to do so by that day will result in the Court dismissing the case.

**D.     Boyd's request for costs and attorney fees is granted, whereas Boyd's request for sanctions and Zaid's request for costs and fees against Boyd are denied.**

To deter meritless claimants, the KPSPA mandates an award of costs and reasonable attorneys' fees to the defendant should the defendant prevail on her motion to strike under the act.[117]  The KPSPA also authorizes courts to grant "additional relief, including sanctions upon the responding party as the court determines necessary to deter repetition of the conduct by others similarly situated."[118]  Contrary to Zaid's statement in his response, the phrase "as the court determines necessary" does not apply to the initial award of costs of litigation and reasonable

---

[117] K.S.A. § 60-5320(g).

[118] *Id.*

attorney fees.  Rather, it grants courts discretion solely as to whether to impose additional sanctions on top of the mandatory costs and fees.

As stated above, Boyd has prevailed on his Motion to Strike.  Therefore, the Court is prepared to award Boyd his costs of litigation and attorney fees incurred in litigation up to this point upon Boyd showing that his requested costs and fees are reasonable.  However, the Court denies Boyd his request for additional sanctions as they are unwarranted by this case.  Zaid's claim fails the test of the KPSPA, but only by not alleging and presenting specific evidence in support of his position.  The Court believes an award of costs and attorney fees will sufficiently deter other claimants from failing to plead with the requisite specificity without the need for sanctions.

Zaid does not request an award of costs and fees directly.  Instead, he merely quotes the KPSPA provision allowing an award of costs and fees to the responding party for a frivolous motion to strike.[119]  Having found that Boyd's motion to strike under the KPSPA was not frivolous or intended to cause delay, the Court denies Zaid's implied request for costs and fees.

**E.      Boyd's Motion to Dismiss under Rule 12(b)(6) is denied as moot.**

Zaid's claim has been struck under the KPSPA; however, Zaid is given an opportunity to file an Amended Complaint.  Therefore, Boyd's Motion to Dismiss under Rule 12(b)(6) is not ruled upon at this time.  If Zaid does not submit an Amended Complaint by the required date, or is his Amended Complaint is still found to be inadequate for the reasons discussed in this Order, the Court may grant the Motion to Dismiss without further briefing.  If Zaid amends his Complaint, he must allege specific facts meeting Rule 9(g)'s requirements for specifically pleading special damages, from which a court may reasonably infer special damages.

---

[119] *Id.*

**IT IS THEREFORE ORDERED** that Defendant's Motion to Strike and/or Dismiss (Doc. 14) is **GRANTED IN PART AND HELD UNDER ADVISEMENT IN PART**.  The Motion to Strike is Granted; but the Motion to Dismiss is held under advisement in part pending any Amended Complaint Plaintiff may submit.

**IT IS FURTHER ORDERED** that Defendant is awarded costs and reasonable attorney fees incurred in responding to Plaintiff's defamation claim, contingent upon Defendant submitting a detailed request for the same which meets the Court's approval.

**IT IS SO ORDERED.**

Dated this 28th day of September 2022.


*Eric F. Melgren*

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE